STATE of Missouri, Respondent,

v.

Cedric FREEMAN, Appellant.

No. WD 64305.

Missouri Court of Appeals,
Western District.

Feb. 21, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 2006.

As Modified May 2, 2006.

Susan L. Hogan, Kansas City, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

Before LOWENSTEIN, P.J., SPINDEN and BRECKENRIDGE, JJ.

PATRICIA BRECKENRIDGE, Judge.

Cedric Freeman appeals his conviction following a bench trial for the class A misdemeanor of resisting arrest, in violation of section 575.150, RSMo 2000, and the class B felony of assault of a law enforcement officer in the second degree, in violation of section 565.082.[1] In his sole point on appeal, Mr. Freeman contends the trial court plainly erred in proceeding to trial without a jury because the court failed to ascertain in open court and on the record that he understood that he was

---

1. All statutory references are to the Revised Statutes of Missouri 2000. Sections 575.150 and 565.082, however, have been amended since the date Mr. Freeman committed the offenses at issue in this case.

entitled to a jury trial and there is no indication in the record that he knowingly, intelligently, and voluntarily waived his right to a jury trial. Because the record fails to demonstrate with unmistakable clarity that Mr. Freeman waived his right to a jury trial, Mr. Freeman's conviction for the class B felony of assault of a law enforcement officer is reversed. The case is remanded to the trial court for a new trial on that count. Mr. Freeman's conviction for the class A misdemeanor of resisting arrest is affirmed.

**Factual and Procedural Background**

On February 5, 2002, Mr. Freeman and his girlfriend, Latrice Abercrombie,[2] were arguing outside Mack Freeman's house because Mr. Freeman would not give Ms. Abercrombie the keys to her car. Ms. Abercrombie did not want Mr. Freeman to drive her car because he had been drinking. When Mack Freeman, who is Mr. Freeman's brother, heard the commotion, he called the police. Officers Maggie McGuire and Michael Brenton of the Kansas City Police Department responded to the call.

When the officers arrived on the scene, they saw Mr. Freeman and Ms. Abercrombie arguing. As the officers approached the couple, Mr. Freeman said, "we don't need you here, everything's fine, we don't need you here, I will give her back her keys." When the officers approached Mr. Freeman, they noticed that he was wearing a "puffy" coat, appeared intoxicated, and had a bottle and a set of keys in his right hand. As the officers came nearer, Mr. Freeman backed up against the car and put his left hand in his pocket. Fearing that Mr. Freeman might be reaching for a weapon, Officer McGuire reached for Mr. Freeman's right hand and Officer Brenton attempted to grab his left hand. As Officer McGuire tried to grab Mr. Freeman's hand, Mr. Freeman swung the bottle at her. As the officers attempted to restrain Mr. Freeman, they gave him verbal commands to put his hands behind his back and Officer Brenton told Mr. Freeman that he was under arrest for disorderly conduct. Mr. Freeman refused to comply with the officers' commands and told the officers, "You are going to have to kill me to get me in handcuffs." In response, Officer McGuire sprayed Mr. Freeman in the face with pepper spray two times. The pepper spray, however, did not appear to have any effect on Mr. Freeman.

After Mr. Freeman was sprayed with pepper spray, he became assaultive and began swinging at the officers as they attempted to get him under control. Because of Mr. Freeman's "puffy" coat, however, the officers were unable to gain control of his arms. As the officers tried to subdue Mr. Freeman, he attempted to grab Officer Brenton's gun and, being unsuccessful in that attempt, he then attempted to grab Officer McGuire's gun. As Officer McGuire struggled to keep Mr. Freeman from grabbing her gun, the two officers and Mr. Freeman fell in a pile on the ground. Officer McGuire ended up on the bottom of the pile, Mr. Freeman in the middle, and Officer Brenton on the top. As Officer McGuire attempted to get Mr. Freeman off of her, he swung at her face and chest. At that time, Mack Freeman came running out of his house and yelled, "Don't kill my brother" and "I am here to help, I am here to help." Mack Freeman got on top of the pile and attempted to grab Mr. Freeman's arms and assist the officers in restraining his brother.[3]

---

**2.** At trial, Ms. Abercrombie was also referred to as Lynn.

**3.** Mack Freeman was ultimately arrested and charged with hindering or interfering with an

After Mack Freeman joined the fracas, Officer McGuire tried to restrain Mr. Freeman with a lateral vascular neck hold. As she attempted the restraint, however, Mr. Freeman bit her hand and would not let go. To prevent a more severe bite, Officer McGuire forced her hand further into Mr. Freeman's mouth. Officer McGuire then began to strike Mr. Freeman in the head with her knee in an attempt to get him to release her hand. At this point, additional officers arrived on the scene. One officer pulled Mack Freeman from the pile, while others subdued Mr. Freeman and got Officer McGuire's hand out of Mr. Freeman's mouth. The officers arrested Mr. Freeman for disorderly conduct.

Immediately after having her hand removed from Mr. Freeman's mouth, Officer McGuire's hand began to swell. Mr. Freeman's teeth had broken the skin on her hand and her skin was "pulled up toward the top" of her hand. As a result of the bite, Officer McGuire suffered nerve damage, losing sensation in her middle finger for five months.[4]

Mr. Freeman was ultimately charged with one count of the class A misdemeanor of resisting or interfering with arrest, in violation of section 575.150, and one count of the class B felony of assault of a law enforcement officer in the second degree, in violation of section 565.082.1(1). Following a bench trial, the trial court found Mr. Freeman guilty on both counts. Thereafter, Mr. Freeman filed a motion for new trial, claiming that the trial court erred in finding him guilty of assault on a police officer because the State failed to prove that he inflicted "serious physical injury" on Officer McGuire. The trial court denied Mr. Freeman's motion for a

new trial and sentenced Mr. Freeman, as a prior and persistent offender, to concurrent terms of one year in jail for resisting arrest and ten years in prison for second degree assault of a law enforcement officer. Mr. Freeman filed this appeal.

### Plain Error Committed In Proceeding to Trial Without a Jury

In his sole point on appeal, Mr. Freeman asserts the trial court plainly erred in proceeding to trial, without a jury, in violation of his fundamental right to a jury trial. In particular, Mr. Freeman claims that because the trial court failed to ascertain in open court and on the record that he understood that he was entitled to a jury trial and that he affirmatively waived that right, the record did not contain any proof that he knowingly, intelligently, and voluntarily waived his right to a jury trial. In seeking plain error review of his claim, Mr. Freeman acknowledges that he made no objection to being tried by the court and failed to include this issue in his motion for new trial. Nevertheless, "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. Thus, this court will review Mr. Freeman's claim for plain error.

This court conducts a two-step review for plain error. *State v. Bode*, 125 S.W.3d 924, 927 (Mo.App. W.D.2004). In the first step, this court examines the record to determine whether the trial court committed error, affecting substantial rights, that was "evident, obvious, and clear." *Id.* If such error is discovered, this court moves on to the second step. *Id.* In

---

arrest. He was tried and acquitted of the charge.

**4.** At the time of trial, Officer McGuire still did not have full strength in her hand and had a scar from the injury.

the second step, this court must determine whether a manifest injustice or a miscarriage of justice resulted from the error. *Id.* Only if the error caused such an injustice will this court reverse the conviction. *Id.* Mr. Freeman bears the burden of demonstrating the existence of a manifest injustice or miscarriage of justice. *State v. Franklin,* 144 S.W.3d 355, 359 (Mo.App. S.D.2004).

■■■ In Missouri, a criminal defendant "has both a federal and state constitutional right to have a jury decide his guilt or innocence." *State v. Mitchell,* 145 S.W.3d 21, 23 (Mo.App. S.D.2004) (citing U.S. CONST. amend. VI and XIV; Mo. CONST. art. I, section 22(a)). A criminal defendant, however, may " 'waive his constitutional right to a jury trial provided such waiver is voluntarily, knowingly and intelligently made.' " *Id.* (citations omitted). In regard to a defendant's constitutional right to a jury trial, Rule 27.01 provides:

(a) All issues of fact in any criminal case shall be tried by a jury to be selected, summoned and returned in the manner prescribed by law, unless trial by jury be waived as provided in this Rule.

(b) The defendant may, with the assent of the court, waive a trial by jury and submit the trial of any criminal case to the court, whose findings shall have the force and effect of the verdict of a jury. In felony cases such waiver by the defendant shall be made in open court and entered of record.

In felony cases, "[u]nder the Constitution and Rule 27.01(b), a waiver by the accused and an assent of the court must appear from the record with unmistakable clarity." *State v. Bibb,* 702 S.W.2d 462, 466 (Mo. banc 1985). In the absence of such an unmistakably clear waiver in a felony

case, a defendant is entitled to a remand for a new trial under plain error review. *State v. Cooper,* 108 S.W.3d 101, 106 (Mo. App. E.D.2003). *See also Mitchell,* 145 S.W.3d at 25; *State v. Hamilton,* 8 S.W.3d 132, 134 (Mo.App. S.D.1999); *State v. Rulo,* 976 S.W.2d 650, 653 (Mo.App. S.D. 1998). In misdemeanor cases, however, while a defendant is entitled to a jury trial, if no jury trial is demanded, the case may proceed to trial before the court. Section 543.200.[5]

■■■ In this case, Mr. Freeman was charged with the class A misdemeanor of resisting arrest and the class B felony of second degree assault of a law enforcement officer. While Mr. Freeman claims the trial court failed to ascertain in open court and on the record that he affirmatively waived his right to a jury trial, he makes no distinction between the felony count and misdemeanor count. However, "where an accused [in a misdemeanor case] makes no request for a jury trial and proceeds to trial without a jury, he cannot successfully claim on appeal that his right to a jury trial was abridged." *State v. Patrick,* 816 S.W.2d 955, 957 (Mo.App. S.D.1991). Thus, because Mr. Freeman did not demand a jury trial on the misdemeanor count and proceeded to trial without a jury on that count, he cannot complain on appeal about the lack of a jury trial with respect to that charge. Consequently, there is no error, plain or otherwise, so Mr. Freeman's claim with respect to the misdemeanor charge of resisting arrest is denied. Accordingly, this court will review Mr. Freeman's claim for plain error only with respect to the felony charge of second degree assault of a law enforcement officer.

---

5. Section 543.200 provides, "[i]n misdemeanor cases, after the plea of the defendant has been entered, if he pleads not guilty, the defendant or prosecuting attorney may demand a jury; but if no jury is demanded, the case may be tried by the associate circuit judge."

■ In this case, the record on appeal shows no written or oral waiver by Mr. Freeman of his right to a jury trial. In its brief, the State even concedes that the record "does not reveal when [Mr. Freeman] waived his right to jury trial." Consequently, there is no basis in the record to determine that Mr. Freeman knowingly, intelligently, and voluntarily waived his right to trial by jury. Nevertheless, the State offers numerous reasons why, even in the absence of an unmistakably clear waiver, this court should decline to review Mr. Freeman's claim.

First, the State claims that various docket entries establish that Mr. Freeman must have waived his right to a jury trial. For example, the State argues that Mr. Freeman may have waived his right to a jury trial as early as May 13, 2002, because a docket entry on that date indicates that a court trial was scheduled for June 17, 2002. Nevertheless, while two additional docket entries on April 21, 2003, and June 11, 2003, also indicate that a court trial was scheduled, two other docket entries on December 6, 2002, and July 24, 2003, indicate that a jury trial was scheduled. In fact, none of the docket entries indicate that it was Mr. Freeman who requested either a jury trial or a bench trial. Thus, in reviewing the trial court's docket sheet in this case, it does not appear "with unmistakable clarity" that Mr. Freeman waived his right to a jury trial. *Bibb*, 702 S.W.2d at 466.

Next, the State contends this court should decline to review Mr. Freeman's claim because "it is apparent from the record" that Mr. Freeman waived his right to a jury trial in that on July 18, 2003, Mr. Freeman filed a "Motion for Continuance" in which he stated that his "case is scheduled for a bench trial on July 25, 2003." The problem with the State's argument, however, is that Mr. Freeman's attorney filed the "Motion for Continuance," not Mr. Freeman. The fact that Mr. Freeman's attorney may have waived a jury trial, does not demonstrate "with unmistakable clarity" that Mr. Freeman knowingly, voluntarily, and intelligently waived his right. *Id. Cf. Luster v. State*, 10 S.W.3d 205, 212 (Mo.App. W.D.2000) (while record reflected that "trial counsel waived the right to a jury trial," no indication that defendant "expressly waived, on the record, his right, either in writing or orally").

The State next claims this court should decline to review Mr. Freeman's claim because Mr. Freeman waived his right to a jury trial since he did not object when his bench trial began or complain at any other point in the proceedings about the lack of a jury. In effect, the State argues that Mr. Freeman's silence, when he should have spoken, indicates that he voluntarily waived his right to a jury trial. This court addressed the question whether a criminal defendant waives a right to a jury trial by silence in *State v. Seibert*, 103 S.W.3d 295 (Mo.App. S.D.2003).

In *Seibert*, after voir dire and opening statements, in the presence of the defendant, the defendant's counsel announced, " 'the defense would waive jury trial on behalf of [Defendant].' " *Id.* at 298. In response to defense counsel's statement, the State indicated that it had no objection and the court indicated that the request would be honored. *Id.* These proceedings were confirmed in a docket entry. *Id.* Under these circumstances, the court found that because the defendant was present when counsel announced that the defendant was waiving a jury trial and voiced no objection, the defendant failed to establish plain error in the trial court's failure to establish a valid waiver. *Id.* at 299–300. In this case, however, the record does not show that Mr. Freeman's counsel

ever announced to the trial court, either in the presence of Mr. Freeman, or outside his presence, that Mr. Freeman was waiving his right to a jury trial. Thus, this court finds *Seibert* inapplicable in this case and that Mr. Freeman's failure to object when his case proceeded to trial without a jury is insufficient to constitute a knowing, voluntary, and intelligent waiver of his right to a jury trial.

The State next contends that, even assuming that Mr. Freeman did not understand the right that he was giving up, he has failed to demonstrate manifest injustice and, therefore, is not entitled to plain error relief. In particular, the State argues that to show manifest injustice, Mr. Freeman was required to demonstrate both that his waiver was not voluntarily, knowingly, and intelligently made, and "that, had he been adequately apprised of his right to trial by jury, 'he would have insisted on having his guilt or innocence determined by a jury, rather than the trial court.'" The State claims that because Mr. Freeman did not show that he would have insisted on proceeding to trial by jury, he has failed to demonstrate manifest injustice. The State relies on *State v. Ramirez*, 143 S.W.3d 671 (Mo.App. W.D.2004), to support its argument.

In *Ramirez*, the defendant was charged with one count of first degree domestic assault. *Id.* at 672. The day before the defendant's trial was to begin, the trial court questioned the defendant in open court and on the record about whether he was waiving a jury trial. *Id.* at 675. In particular, the trial court asked the defendant if he wanted the court to decide his case, to which he answered, "Yes." *Id.* The court confirmed the defendant's answer by

asking, "Not a jury?" *Id.* The defendant answered, "Yeah." *Id.* The trial court's written trial minutes also reflected the defendant's waiver of a jury trial, noting that the defendant and his counsel appeared in person and the defendant "waive[d] trial by jury and request[ed] a Court trial." *Id.* On appeal, the defendant acknowledged that there was a waiver of his right to a jury trial on the record but claimed the trial court plainly erred in accepting his request for a bench trial because the record showed that the trial court "failed to ascertain with 'unmistakable clarity' that [the defendant]'s waiver of his right to a jury trial was voluntary, knowing, and intelligent[.]" *Id.* at 674. This court disagreed, however, finding no violation of Rule 27.01 because the defendant's "waiver and the court's assent thereto were made in open court and entered of record." *Id.* at 675. Nevertheless, after finding no violation of Rule 27.01, this court, in dictum, also stated that the defendant failed to meet his burden of showing that his waiver was not voluntary, knowingly, and intelligently made and that, if adequately apprised of his right to trial by jury, "'he would have insisted on having his guilt or innocence by a jury.'" *Id.* at 677. (quoting *Luster*, 10 S.W.3d at 212). This finding that the defendant had the burden of showing that he would have insisted on a jury trial was dictum and, in any event, was clearly incorrect because the standard applied, taken from this court's decision in *Luster*, is inapplicable in the context of a direct appeal and should not be followed.[6]

The State also cites *State v. Hatton*, in support of its argument that Mr. Freeman has not demonstrated a manifest injustice. 918 S.W.2d 790, 795 (Mo. banc 1996). In

---

6. *Luster* involved a defendant's claim for postconviction relief and set forth this requirement as the necessary proof to satisfy the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) test on a claim for ineffective assistance of counsel. 10 S.W.3d at 212.

*Hatton*, the Supreme Court addressed the issue of whether the trial court's failure to accept a defendant's waiver of a jury trial rose to the level of manifest injustice. 918 S.W.2d at 795. In that case, the defendant was charged with distributing a controlled substance within one thousand feet of public housing. *Id.* at 792. At the beginning of trial, the defendant's attorney told the judge that the defendant was " 'waiving jury.' " *Id.* at 795. Defense counsel made the statement in front of the defendant and the defendant voiced no objection. *Id.* On appeal, the defendant challenged the validity of the waiver arguing that the trial court committed plain error in failing to "conduct an independent examination and make a separate determination that [the defendant] intentionally relinquished his right to a jury trial." *Id.* The Court, however, disagreed. *Id.* Specifically, while assuming, for the sake of argument, that "the trial court should have conducted a more thorough examination to determine [the defendant]'s understanding of his waiver of his right to a trial by jury," the Court nevertheless held that because, at trial, the defendant "admitted selling crack," the defendant's "admissions were sufficient to remove any concern that the waiver of the jury trial resulted in prejudice" to the defendant. *Id.*

This case is distinguishable from *Hatton*. First, as noted above, in *Hatton*, the record demonstrated that the defendant was present when his counsel stated that he was waiving his right to a jury trial. *Id.* In contrast, in this case, the record fails to show any affirmative waiver of the right to a jury trial by either Mr. Freeman or his defense counsel in Mr. Freeman's presence. Moreover, in *Hatton*, the defendant admitted the conduct on which the charges were based. Here, however, Mr. Freeman testified in his own defense that his arrest was unprovoked and unlawful. In particular, Mr. Freeman testified that

when he saw Officers McGuire and Brenton approaching him, he attempted to give Ms. Abercrombie back her keys. He testified that Officer McGuire told him to put his hands behind his back, to which he replied, "what for" and that he had not done anything wrong to warrant placing his hands behind his back. He testified that when he did not put his hands behind his back after another request from Officer McGuire, Officer McGuire sprayed him in the face with mace. He testified that he covered his face with his hands after he was maced, and at this point, the officers began to punch, kick, and choke him. Mr. Freeman testified that he believed the force the officers were using against him was excessive and the reason he tried to bite someone was because he "was in fear of [his] life." Mr. Freeman also testified that he never attempted to touch either officer's gun, did not have a bottle in his hand, did not have a puffy coat on, and never attempted to hit an officer with a bottle, keys, or his fist.

Therefore, in this case, unlike *Hatton*, where the defendant admitted the conduct on which the charges were based, Mr. Freeman denied his conduct was unlawful and argued that his conduct was justified in that the officers were using excessive force against him. Even if Mr. Freeman's defense "may appear implausible, a jury would have been free to believe it and acquit him." *Rulo*, 976 S.W.2d at 652. Accordingly, this court finds that *Hatton* does not support the State's argument that reversal is not mandated in this case.

Finally, the State claims this court should decline to review Mr. Freeman's claim because Mr. Freeman was "well acquainted with the criminal justice system" having at least two prior felony convictions and, therefore, he should have been "well acquainted with his basic right to a jury trial." Thus, the State argues that his

failure to voice any objection to proceeding without a jury constitutes a waiver of Mr. Freeman's ability to claim that the trial court plainly erred in proceeding to trial without a jury. The State further contends that Mr. Freeman waived his right to complain about the lack of a jury because he demonstrated his knowledge of the criminal justice system in pro se pleadings and letters he filed with the trial court, and he had no trouble asserting his legal rights in the past. The State relies on *State v. Martin*, 940 S.W.2d 6 (Mo.App. W.D.1997), to support its argument.

In *Martin*, the defendant was charged and convicted by a judge of aggravated stalking. *Id.* at 6–7. On appeal, the defendant claimed the trial court plainly erred in failing to determine on the record whether he knowingly, intelligently, and voluntarily waived his right to a jury trial because the record did not reflect "with unmistakable clarity an affirmative waiver" of his right to a trial by jury. *Id.* at 9. This court declined the defendant's request for plain error review "because he ... failed to show that a manifest injustice or miscarriage of justice ... resulted" from the trial court's alleged error. *Id.* at 9–10.

This court's decision in *Martin*, however, is consistent with *Hatton* and, therefore, distinguishable from this case. Specifically, in *Martin*, at trial, the defendant admitted that he made threatening phone calls to the victim; had been physically violent with the victim; and had previously struck, punched, choked, slapped, and held a knife to the victim's throat. 940 S.W.2d at 8. Thus, in *Martin*, the defendant admitted to engaging in the conduct on which the charges were based. In this case, however, as discussed above, Mr. Freeman did not admit to engaging in the conduct with which he was charged but, rather, testified that he was justified in his actions

because the officers used excessive force against him. Thus, this court finds that *Martin* is not applicable in this case.

Rather, this court finds that the facts of this case are similar to the facts in *Cooper* and *Rulo*. For example, in *Cooper*, there was no indication in the record that the defendant waived his right to a trial by jury. 108 S.W.3d at 106. Thus, the court found that "[s]uch failure to fulfill the requirements of Rule 27.01(b) that a waiver of trial by jury shall be made in open court and entered of record warrants a reversal of defendant's sentence and a remand for a new trial under plain error review." *Id.* Likewise, in *Rulo*, the record lacked any indication that the defendant waived a jury trial in open court and on the record. 976 S.W.2d at 651. The court reversed the defendant's conviction and remanded for a new trial, finding that when the right to a jury trial is altogether denied, " 'the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty.' " *Id.* at 653 (quoting *Rose v. Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986)).

In sum, the record in this case fails to show an "unmistakably clear" waiver by Mr. Freeman of his right to a jury trial on the charge of second degree assault of a law enforcement officer, a class B felony. To deny Mr. Freeman's claim of error "would be the equivalent of totally ignoring Rule 29.01(b)." *Id.* Consequently, the trial court committed error that was "evident, obvious, and clear" from the face of the record. *Bode*, 125 S.W.3d at 927. Moreover, because Mr. Freeman has demonstrated that the trial court's error resulted in manifest injustice, i.e., the violation of his constitutional right to a jury trial, he is entitled to plain error relief. *Cooper*, 108 S.W.3d at 106. Accordingly,

Mr. Freeman's conviction and sentence for second degree assault of a law enforcement officer is reversed and the case is remanded to the trial court for a new trial on this count. Mr. Freeman's conviction and sentence for the class A misdemeanor of resisting arrest is affirmed.

All concur.