

# Missouri Court of Appeals

## Southern District

### Division Two

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| vs. | ) No. SD33849 |
| | ) |
| JESSIE LEE WHITAKER, | ) FILED: October 25, 2016 |
| | ) |
| Appellant. | ) |

### APPEAL FROM THE CIRCUIT COURT OF DUNKLIN COUNTY

Honorable Robert N. Mayer, Judge

## REVERSED AND REMANDED

*(Before Lynch, P.J., Rahmeyer, J., and Scott, J.)*

PER CURIAM. Jessie Whitaker appeals his bench-trial conviction for forcible rape, charging plain error in the court's finding that he waived his right to jury trial as part of a polygraph agreement with the prosecutor. Because the record does not demonstrate with unmistakable clarity that Whitaker waived this right, we reverse and remand.[1]  ***State v. Bibb***, 702 S.W.2d 462, 466 (Mo. banc 1985); ***State v. Freeman***, 189 S.W.3d 605, 609 (Mo.App. 2006).

---

[1] Therefore, we need not address Whitaker's other arguments for relief.

## Background and Analysis

Whitaker could waive trial by jury – and be held to that waiver – if he did so knowingly, intelligently, and voluntarily. *See **State v. Baxter***, 204 S.W.3d 650, 653 (Mo. banc 2006). Constitutionally "the waiver must appear in the record with 'unmistakable clarity.'" ***Id***. (quoting ***Bibb***, 702 S.W.2d at 466; also citing Rule 27.01(b)[2]). Absent an unmistakably-clear waiver, it is said that Whitaker "is entitled to a remand for a new trial under plain error review" in this felony case. ***Freeman***, 189 S.W.3d at 609; *see also **State v. Beam***, 334 S.W.3d 699, 704 (Mo.App. 2011).

Best practice thus called for the trial court to question Whitaker personally on the record to ensure that he understood his jury-trial right, understood what would be lost by a waiver, had discussed the issue with defense counsel, and voluntarily intended to waive the right. ***Baxter***, 204 S.W.3d at 655. Then Whitaker would "have no grounds [now] to contend that his waiver was ineffective." ***Id***.

This never happened, which initially was not the court's fault. When the prosecutor announced at an August 2013 hearing that "a polygraph agreement" had been reached, no mention was made of a jury waiver and no writing was offered to the court. The court was advised only that Whitaker (who had been in jail two years in lieu of a $500,000 cash-only bond), should be fitted with a GPS tracker that Friday, then released from jail for a week, with a polygraph scheduled the following Wednesday and Whitaker returning to jail the next day. Having been told only this,

---

[2] Rule 27.01(b) permits a defendant, with the court's "assent," to waive a trial by jury. "In felony cases such waiver by the defendant shall be made in open court and entered of record." ***Id***.

the court questioned Whitaker only to assure that he understood his one-week release and when to return to jail.[3]

Months later (January 22, 2014), the prosecution did not object, complain, or allege waiver when the defense asked for a jury setting and the court scheduled the

---

[3] We quote the relevant colloquy, italicizing the court's questions to Whitaker and his replies:

> [PROSECUTOR]:  Judge, we have a polygraph agreement.  Mr. Whitaker is set for polygraph examination next Wednesday.  Also part of that condition, the State agreed he could be released on a GPS monitor.  Now, that won't be available until Friday ... but he can be released on that on that [sic] monitor on Friday.  Special condition of that monitor release is that he not be in Dunklin County, he remain in Hayti, except to come over here for the polygraph examination.
>
> THE COURT:  Okay.  So you worked out an agreement where he can be released on his own recognizance?
>
> [DEFENSE COUNSEL]:  Yes, sir.
>
> THE COURT:  Okay.  The Defendant does appear and the Court orders that he be released from the County Jail, that he be fit with GPS monitoring system, that he be outside Dunklin County at all times with the exception of being here in Kennett to take polygraph. And you said that's scheduled for when?
>
> [PROSECUTOR]:  Wednesday at 11:30.
>
> THE COURT:  Wednesday at 11:30.
>
> [PROSECUTOR]:  Thereafter, next Thursday surrender to the jail by 6:00 p.m.
>
> THE COURT:  So you want him back in jail?
>
> [PROSECUTOR]:  Yes, sir.  The agreement is he's to be released.  So he can be released on Friday and return on Thursday.
>
> THE COURT:  Thursday at 6:00 p.m.
>
> [PROSECUTOR]:  By 6:00 p.m., yes, sir.
>
> *THE COURT:  You understand that, Mr. Whitaker?*
>
> *THE DEFENDANT:  Yes, sir.*
>
> *THE COURT:  You're going to be released but you have to be back in jail Thursday at 6:00 p.m.  You understand you're not to be in Dunklin County –*
>
> *THE DEFENDANT:  Yes, sir.*
>
> *THE COURT:  -- with the exception of that polygraph test?  So I'm going to release you on your own recognizance [Friday].  You understand?*
>
> *THE DEFENDANT:  Okay.*

case for a jury trial.[4]  Not until three more months had passed (April 9, 2014) did the state demand a bench trial, charging for the first time of record that Whitaker "had waived jury trial in connection with the polygraph agreement."  The court set the issue for a future hearing, then heard argument twice, on June 19 and 25, 2014.  Defense counsel argued that Whitaker signed the polygraph agreement, but changed his mind, did not take the scheduled test, and thus should still get a jury trial.

Although Whitaker attended all these hearings and two later ones where the jury-trial issue was revisited, the court never questioned him personally on the record per ***Baxter***, 204 S.W.3d at 655, in ruling that Whitaker had waived his right to jury trial.   Thus we must decide whether the record *otherwise* demonstrates with unmistakable clarity a knowing, voluntary, and intelligent jury waiver applicable to this case.  ***Id***. at 654.  For several reasons, we cannot conclude that it does.

---

[4] Again quoting the relevant colloquy of record (our emphasis):

> [DEFENSE COUNSEL]:  *Your Honor, we need to get this matter set for a jury trial.*
>
> (Discussion held off the record.)
>
> THE COURT: We'll take that off trial docket and case of Mr. Whitaker set for March 27th. Is that all right?
>
> [DEFENSE COUNSEL]:  That's fine with me, Judge.
>
> THE COURT: We'll have preliminary matters to discuss at 8:30 a.m., *jury selection at 9:00 a.m.*, and have a pretrial conference on March 12th at 10:30 a.m.
>
> [Defense counsel's request to review bond amount omitted]
>
> THE COURT:  All right. I'll review this and we've got it set for trial in March.  So let me review this and we'll take a look at it and see if we can allow him -- set a bond for him *prior to the jury* --
>
> [DEFENSE COUNSEL]:  Thank you, Judge.
>
> THE COURT:  -- prior to the trial.

First, as noted, the prosecution did not object or claim waiver when, long after the polygraph agreement and Whitaker's change of heart, the defense asked for a jury-trial date and the court scheduled a jury trial. An assistant prosecutor handled that hearing, but he had some prior experience with the case. At any rate, it seems impossible that the prosecution would acquiesce in this request for and scheduling of a jury trial had an unmistakably-clear waiver been of record or even just in the state's own file.

That leaves, of relevant record, only a polygraph agreement that fails to move the needle toward unmistakable clarity in these circumstances. Having reproduced that agreement in the appendix, we need offer just a few observations:

1. The state could and certainly should have emphasized and clarified its waiver provisions if, as it appears, it planned to notify the court only if and after a dispute arose, a tactic inimical to timely and effective ***Baxter*** best-practice questioning so "the defendant will have no grounds later to contend that his waiver was ineffective." ***Id***. at 655.

2. The state did not, but easily could have made it patently clear that Whitaker was waiving a jury irrevocably, upon signature, no matter what, or in any comparable terms if that truly was the state's intent. When shunning the benefit of a ***Baxter*** best-practice inquiry, the state needed to draw or edit its form document to carry its unmistakable-clarity burden alone, if necessary.

3. The state arguably foresaw that Whitaker might not take the test (#2, "in the event that Defendant shall submit to such polygraph examination ...."), but did not expressly provide for jury waiver in that circumstance.

The state's waiver argument from this agreement may be a reasonable one, or even the best of several reasonable document interpretations, but the constitutional standard is "unmistakable clarity." ***Id***. at 653. Absent ***Baxter*** best-practice

questioning, *this* record is not unmistakably clear as to jury waiver, so we reverse and remand for a new trial. **Beam**, 334 S.W.3d at 704; **Freeman***,* 189 S.W.3d at 609.[5]

[5] *Contrast* **State v. Renn**, 453 S.W.3d 276 (Mo.App. 2014), also involving a Dunklin County polygraph agreement, but where the point on appeal "d[id] *not* allege that Renn's jury trial waiver was not 'knowing, voluntary, and intelligent' or not sufficiently clear," **id**. at 277.

Finally, the state asserts that even if Whitaker "took the test and it showed he was being untruthful or deceptive, the result of the test could not have been admitted into evidence," citing **State v. Stewart**, 265 S.W.3d 309, 316 (Mo.App. 2008). But the polygraph agreement was silent on this, and if Whitaker knew of cases like **Stewart**, he might also know that inculpatory statements made preparatory to, during, or after a polygraph exam may be admissible even when test results are not. *See, e.g.,* **State v. Ficke**, 892 S.W.2d 814, 816 (Mo.App. 1995); **State v. Andrews**, 882 S.W.2d 179, 181 n.2 (Mo.App. 1994); **State v. Owens***,* 759 S.W.2d 73, 75 (Mo.App. 1988); **State v. Eastin***,* 735 S.W.2d 50, 52 (Mo.App. 1987). And if we assume that knowledge, it seems entirely foreseeable that he or any accused might second-guess a polygraph appointment, making it even more important that the state have its form document clearly address that possibility, especially if it is disinclined toward early **Baxter** best-practice questioning.

# Appendix

STATE OF MISSOURI        )
                                        )SS.

COUNTY OF DUNKLIN     )

AGREEMENT

Comes now Plaintiff, State of Missouri, by Stephen P. Sokoloff, Prosecuting Attorney of Dunklin County, and defendant Jessie Lee Whitaker, together with his Attorney, Daren Todd, and does hereby agree and stipulate to the following:

That in consideration of mutual agreements contained herein, the parties agree that Defendant shall undergo polygraph examination to be conducted by the Missouri State Highway Patrol.

1.      That the parties further agree that Defendant has consulted with counsel prior to the entry of this agreement and has determined that the entry into this agreement and the submission to such polygraph examination is in his/her own interest.

2.      That the parties further agree that in the event that Defendant shall submit to such polygraph examination and that the examiner shall obtain results indicating that the Defendant is not being truthful with respect to the operative questions relating to the charges of Forcible Rape occurring on or about August 26, 2011, the Defendant will be prosecuted to the full extent of all pending charges and any additional charges which may be filed arising out of the incidents listed above, without jury trial, but rather in trial to the Court.

3[.]      The parties further agree that as an element of this agreement, Defendant may be released from jail for a period of one week on electronic monitoring with GPS, with conditions and restrictions on his movements, as ordered by the court.

Plaintiff State of Missouri, by and through Stephen P. Sokoloff, Prosecuting Attorney of Dunklin County, does agree that in the event that the examiner's opinion is that the Defendant is being truthful in denying his involvement in the conduct described above, the State agrees to the [sic] do the following: the State will agree to conduct polygraph examination of the victim and in the event he/she is determined to be untruthful or, in the event that the victim shall refuse to submit to such examination, the state will dismiss the charges.

In the event that the results of the test are to be determined to be inconclusive, or in the event that the Defendant shall be determined to be untestable, then this agreement shall be null and void excepting the jury waiver portion of the agreement, and this case will proceed to trial on the existing counts, and no new counts will be filed out of the same incident, except in the event that the Defendant is determined by the operator to be using countermeasures that make him/her untestable, in which case, the test results shall be considered as the Defendant being deceptive, and the provisions of this agreement relating to failure shall be enforced.

That counsel for the Defendant has discussed with Defendant the risks and benefits connected with the entry of this agreement, that he has explained to Defendant the consequences of the entry of such agreement, and that he has advised the Defendant to enter into such agreement after such consultation.

That in consideration of promises and mutual agreements contained hereinabove, I do further waive my right to a trial by jury and acknowledge that I have consulted with my attorney about this waiver and do so of my own free will after such consultation.

IN WITNESS WHEREOF we have hereunto set our hands this <u>14th</u> day of <u>April</u>, 2013.

/s/_____
Stephen P. Sokoloff,
Prosecuting Attorney of Dunklin County

/s/_____
Defendant

/s/_____
Attorney for Defendant

8