

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,        )     *Opinion issued March 21, 2023*
                                      )

             Respondent,    )

                                        )

v.                                 )     No. SC99747

                                        )

JACOB HILBERT,            )

                                        )

             Appellant.     )

## APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
### The Honorable Jason M. Sengheiser, Judge

Jacob Hilbert appeals the circuit court's judgment finding him guilty of two counts of first-degree statutory sodomy and one count of first-degree child molestation. Hilbert claims the circuit court plainly erred by proceeding to a bench trial without obtaining a constitutionally sufficient waiver of his right to a jury trial. Hilbert also contends the circuit court plainly erred by admitting a video recording pursuant to section 492.304.[1] Finding no plain error, this Court affirms the circuit court's judgment.

## Factual and Procedural Background

In September 2018, Hilbert was charged with the above crimes. Hilbert's case was called for a jury trial in January 2020. Hilbert was present when voir dire commenced.

---

[1] All statutory references are to RSMo 2016, unless otherwise specified.

During jury selection, counsel and the prospective jurors engaged in thorough, honest, and fervent discussions of what burden of proof the jury would have to abide by and the fairness and impartiality that would be required of the jurors who were selected to hear this case involving allegations of sexual abuse of a child.  On the second day of jury selection, Hilbert's counsel made an inappropriate remark to the prospective juror panel, which rendered proceeding with jury selection unfair.  Consequently, the circuit court dismissed the jury panel because it was "blown" and set a new date for Hilbert's jury trial.

Several weeks later, a docket entry indicates Hilbert's case was set for a bench trial. The docket entry and record contain no indication of what prompted the shift to a bench trial.  Significantly, the following exchange occurred in Hilbert's presence at a pretrial hearing:

> [The Court]: So I think, [defense counsel], you've represented that you're wanting a bench trial instead of a jury trial; correct?
>
> [Defense Counsel]: That is correct, your Honor.
>
> [The Court]: I think today we're just here talking about – so we will do it that way starting tomorrow – talking about any motions in limine that either side has and anything else you guys have for me.

Hilbert's bench trial began the following day.  Hilbert did not raise any concerns or object to proceeding without a jury.  However, Hilbert was not personally questioned about waiving his right to a jury before the bench trial.

At trial, the State sought to admit a video recording of the victim's forensic interview pursuant to section 492.304.[2] Katherine Knudson, a forensic interviewer with the Children's Advocacy Center, testified she conducted the interview of the victim, reviewed the video recording of the interview, and found the video recording to be a true and accurate depiction of the interview. Hilbert's counsel was asked if he had any objection to the video recording's admission, to which he replied "No objection, your Honor." The court admitted the video recording at that point.

At the close of the State's evidence, in Hilbert's presence, the court and counsel discussed Hilbert's waiver of the right to a jury trial. Specifically, the following exchange took place:

> [The State]: Your Honor, I don't know. Was there ever a written waiver of a jury trial filed for this? Because I want to make sure that's filed for the record.
>
> [Defense Counsel]: I'll do it.
>
> [The Court]: There wasn't, but we will do that.
>
> [Defense Counsel]: I think we went on the record and said it. We were on the record and said it.
>
> [The Court]: Yeah.

Nevertheless, a written jury waiver was never filed with the court.

---

[2] Prior to Hilbert's first trial setting, the State filed a notice of intent to admit the video recording of the victim's forensic interview pursuant to section 492.304. During a pretrial hearing on the matter, Hilbert's counsel objected to the video recording's admission because the forensic interview occurred nearly two years after the date of Hilbert's alleged crimes. The court overruled Hilbert's counsel's objection at that time.

The court found Hilbert guilty on all counts. During the sentencing hearing, Hilbert's mother made a statement in Hilbert's presence regarding the jury trial waiver:

> The stress was a major influence in the decision to go with the bench trial. [Hilbert]'s trial was moved several times, and each time, it took a toll on [Hilbert] and our family. The first, due to a death in our attorney's family. The second trial was started, but had a hung jury.[3] The whole process was extremely debilitating, and we were all concerned that [Hilbert] could get a fair trial, as it seemed a huge pool of the jury had experiences that may lead to a conflict. This led us to ask whether a bench trial should be considered. After some research, our attorney advised that a judge would know what proof beyond a reasonable doubt is better than anybody, and [Hilbert] decided to go that route.

Following the pronouncement of his sentence, the court examined Hilbert regarding his assistance of counsel:

> [The Court]: Did [defense counsel] explain your rights in a jury trial rather than in a bench trial?
>
> [Hilbert]: I decline to answer.
>
> [The Court]: Was it your decision to go to trial?
>
> [Hilbert]: I decline to answer.

Hilbert also declined to answer all other questions. Hilbert subsequently filed a motion for new trial, which did not include claims of error regarding his alleged jury waiver or the admission of the victim's forensic interview video recording. The circuit court overruled the motion. This appeal follows.[4]

---

[3] Hilbert's mother was presumably referencing the "blown" jury panel following Hilbert's counsel's inappropriate comment.

[4] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

## Standard of Review

Hilbert concedes his arguments on appeal are not preserved for review. Accordingly, Hilbert requests plain error review pursuant to Rule 30.20. Rule 30.20 provides, in pertinent part: "Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *See also State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020).

Plain error review is a two-step process:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

*State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022) (internal quotation omitted).

## Analysis

### I. The Sufficiency of Hilbert's Waiver of His Right to a Jury Trial

In his first point on appeal, Hilbert argues he did not knowingly, voluntarily, and intelligently waive his right to a jury trial. Hilbert contends the record establishes only his counsel intended to waive the right to a jury trial. He claims that, without any affirmative actions on his part, the waiver was not constitutionally sufficient and the circuit court plainly erred.

5

### a. *Overview of Waiver of the Right to a Jury Trial*

The constitutions of the United States and Missouri both guarantee a defendant in a criminal case the right to a jury trial. U.S. Const. amends. VI, XIV; Mo. Const. art. I, secs. 18(a), 22(a). A defendant may waive this right with the consent of the court. Mo. Const. art. I, sec. 22(a). Not every attempted waiver, however, is sufficient. *See State v. Baxter*, 204 S.W.3d 650, 653 (Mo. banc 2006). While a defendant may waive the right to a jury trial with the consent of the court, "such waiver by the defendant shall be made in open court and entered of record." *Id* at 652; Rule 27.01(b).[5] To satisfy this standard, the waiver "must be knowing, voluntary, and intelligent." *Baxter*, 204 S.W.3d at 653. "The best practice for a trial court is to question the defendant personally, on the record, to ensure that the defendant understands the right, understands what is lost in the waiver, has discussed the issue with defense counsel, and voluntarily intends to waive the right." *Id.* at 655. Even if a defendant is not personally questioned on the record, however, a valid waiver may occur if the record establishes a defendant knowingly, voluntarily, and intelligently waived his or her right to a jury trial. *Id.* at 654-55.[6]

---

[5] All references to Rule 27.01(b) are to the version of the rule effective from January 1, 1980 to June 30, 2022.

[6] This Court previously stated a waiver must appear in the record with "unmistakable clarity." *See Baxter*, 204 S.W.3d at 653 (quoting *State v. Bibb*, 702 S.W.2d 462, 466 (Mo. banc 1985)). Significantly, the "unmistakable clarity" language that originated in *Bibb* was only used to emphasize the constitution and Rule 27.01(b) require the record to show the defendant's assent to waiver. 702 S.W.2d at 465-66. This Court's use of the term "unmistakable clarity" did not create a new, heightened standard for establishing a valid jury waiver. An appellate court's sole focus must be upon whether the record establishes a defendant's waiver was knowing, voluntary, and intelligent and, therefore, constitutionally sufficient.

6

This Court addressed a similar challenge in *Baxter*. *Id.* at 652. In that case, the defendant's counsel informed the circuit court of an agreement to waive the defendant's right to a jury trial and proceed with a bench trial, in exchange for the State's agreement to reduce an arson charge from a class B to a class C felony. *Id.* The defendant was present and remained silent while his counsel announced the agreement and waiver. *Id.* The circuit court, however, never personally questioned the defendant about waiving his right to a jury trial or whether he had discussed the right with his attorney. *Id.* After the defendant was found guilty, he "expressed dissatisfaction with his trial counsel on two issues, neither involving the denial of a jury trial." *Id.* The defendant appealed, arguing his waiver of a jury trial did not appear in the record with unmistakable clarity. *Id.*

This Court rejected the defendant's argument, holding his waiver was sufficient because certain facts in the record established his waiver was knowing, voluntary, and intelligent. *Id.* at 654. Specifically, this Court relied upon two factors to reach its conclusion. *Id.* "First is the fact that Baxter has never alleged, even on appeal, that he was not informed of the right by trial counsel, that he did not understand the right, that he did not voluntarily waive the right, or that he would have asserted the right if questioned by the judge." *Id.* Second, this Court emphasized the defendant "struck a bargain" with the State for lesser charges in exchange for his waiver, which presumably required his involvement and approval. *Id.*

Conversely, Missouri courts have repeatedly held a waiver is not knowing, voluntary, and intelligent when the only evidence of waiver comes from defense counsel's bare assertions. *See, e.g.*, *State v. Feldt*, 512 S.W.3d 135, 145 (Mo. App. 2017); *State v.*

7

*Williams*, 417 S.W.3d 360, 362 (Mo. App. 2013); *State v. Beam*, 334 S.W.3d 699, 705 (Mo. App. 2011) ("The fact that Beam's counsel may have requested a bench trial in her presence, without more, does not demonstrate 'with unmistakable clarity' that Beam 'voluntarily, knowingly and intelligently' waived her right to a jury."); *State v. Freeman*, 189 S.W.3d 605, 610 (Mo. App. 2006). In *Williams*, the sole evidence of the defendant's intent to waive his right to a jury came from a statement by his counsel in a pretrial motion and his counsel's affirmative answer to the court's opening question of whether the jury had been waived. 417 S.W.3d at 363. Accordingly, the court of appeals held the circuit court committed plain error by proceeding to a bench trial because the record did not contain "something more" than a bare assertion by defense counsel.[7] *Id.*

### b. Hilbert's Waiver Was Sufficient

Just as in *Baxter*, "[t]his case turns on whether there are facts in the record that demonstrate that [Hilbert's] waiver was knowing, voluntary, and intelligent." *See* 204 S.W.3d at 654. Hilbert argues he did not personally take any affirmative action to waive his privilege. Viewing the record as a whole, however, this Court disagrees and finds Hilbert knowingly, voluntarily, and intelligently waived his right to a jury trial.

---

[7] In *Williams*, the court of appeals appears to have created a "something more" test when the waiver of a jury trial is not made by the defendant in open court and entered on the record. While there may need to be evidence in the record indicating the defendant knowingly, intelligently, and voluntarily waived his right to a jury trial when his counsel waives the right on the record without comment from the defendant, there is no basis in this Court's prior caselaw articulating a "something more" test. *Baxter* and this Court's prior cases merely require the facts and circumstances from the record establish the waiver was knowingly, intelligently, and voluntarily entered. *Baxter*, 204 S.W.3d at 653. To the extent *Williams* and other court of appeals cases suggest a "something more" test, they should no longer be followed.

Crucially, like in *Baxter*, Hilbert "has never alleged, even on appeal, that he was not informed of the right by trial counsel, that he did not understand the right, that he did not voluntarily waive the right, or that he would have asserted the right if questioned by the judge." *Id.* Additionally, as in *Baxter*, Hilbert was present both times his counsel acknowledged the waiver of his right to a jury trial and never objected. *Id.*[8] While this Court acknowledges "the failure to object, in many circumstances, may not be determinative," *id.*, Hilbert did not just fail to object to his counsel's statements during the proceedings. Following sentencing, the court directly questioned Hilbert as to whether his counsel explained the distinctions between a bench trial and jury trial. Tellingly, Hilbert neither asserted a negative answer nor expressed concern or confusion. In fact, this point weighs more heavily against Hilbert than it did in *Baxter* because of the specific questions the court asked Hilbert. This Court is not persuaded by Hilbert's argument that it is pertinent he raised no other complaints. Regardless of whether Hilbert raised other complaints, the court examined him on a waiver-related topic, and he could have complained or expressed a lack of understanding if he never intended for his then-completed trial to have been conducted without a jury. *See State v. Groomes*, 656 A.2d 646, 655 (Conn. 1995) ("We decline to allow the defendant to preserve a ground for appeal

---

[8] *See also State v. Seibert*, 103 S.W.3d 295, 299 (Mo. App. 2003) (holding the circuit court did not plainly err because the defendant admitted to committing the underlying criminal acts and "the announcement of the waiver, and the trial court's acceptance of it, were in the record of the proceedings, as was the fact that Defendant was present and voiced no objection"); *United States v. Leja*, 448 F.3d 86, 95 (1st Cir. 2006) (finding a valid waiver when "Leja's counsel represented that Leja wanted a bench trial, and Leja's conduct reflected no objection and, in fact, according to the district court, demonstrated his assent through his facial expression").

merely by refusing to respond to the court's questions regarding whether he waived his right to a jury trial.").

Furthermore, when viewed collectively, several other factors also establish Hilbert's waiver was knowing, voluntary, and intelligent. For one, the procedural history of this case is crucial. Hilbert was present for the jury selection process and the jury panel's dismissal in his first trial setting. In other words, Hilbert possessed firsthand knowledge of when and how a jury was to be selected. *See United States v. Page*, 661 F.2d 1080, 1083 (5th Cir. 1981) (holding, although the defendant neither signed a written waiver nor made any affirmative statement to the court regarding waiver, his waiver was valid because, among other reasons, he was a "learned, articulate man suffering neither language nor perceptive difficulty"). This was not a situation in which Hilbert may not have realized, until too late, that his case was proceeding without a jury. Given his participation in the previous jury selection process, Hilbert necessarily understood and acquiesced to his second trial setting being conducted without a jury. Moreover, Hilbert's mother's statement provides some additional support for the notion that Hilbert knew of and discussed his right to a jury trial with his counsel.[9]

---

[9] To be clear, this Court is not placing great significance upon the testimony of Hilbert's mother and is not relying upon her statement as evidence of Hilbert's intent. Evident from the "blown" jury selection process, Hilbert's mother's statement, however, acknowledged the difficulty of selecting an impartial jury due to the offenses for which Hilbert was charged. She stated this led to a discussion with Hilbert's counsel as to whether a bench trial was a better option, which led Hilbert to take this path. At most, her statement provides additional evidence that Hilbert had been informed of his right to a jury trial and discussed the topic with his counsel.

10

Accordingly, even though there was no sentence reduction agreement like in *Baxter*, the collective circumstances found in the record establish Hilbert's waiver was knowing, voluntary, and intelligent. 204 S.W.3d at 654-55; *see also Groomes*, 656 A.2d at 656 (holding that, in light of the totality of the circumstances, "[w]hat is reflected on the record is not a 'bare' assertion by counsel, but rather a silent defendant who, through his attorney, made a voluntary, knowing and intelligent waiver of his right to a jury trial"). For these same reasons, Hilbert's case is readily distinguishable from cases like *Williams*, 417 S.W.3d at 363-64, and *Beam*, 334 S.W.3d at 706.[10] Hilbert's waiver, therefore, was constitutionally sufficient, and the circuit court did not plainly err.

## II. Admission of the Interview Recording

In his second point on appeal, Hilbert claims the circuit court plainly erred by admitting the video recording of the victim's forensic interview pursuant to section 492.304. Specifically, Hilbert contends the State failed to provide evidence establishing the recording equipment was capable of making an accurate recording, the operator of the

---

[10] This Court reiterates:

> The best practice for a trial court is to question the defendant personally, on the record, to ensure that the defendant understands the right, understands what is lost in the waiver, has discussed the issue with defense counsel, and voluntarily intends to waive the right. If this is done, the defendant will have no grounds later to contend that his [or her] waiver was ineffective.

*Baxter*, 204 S.W.3d at 655. As in *Baxter*, "[t]he mere fact that this on-the-record exchange did not take place in this case, however, does not mean that plain error occurred." *Id.*

11

equipment was competent, and the recording was accurate and had not been altered. *See* section 492.304.1(3).[11]

This Court analyzed a similar challenge to the admission of a tape recording under the common law in *State v. McFadden*, 369 S.W.3d 727, 752-53 (Mo. banc 2012). In *McFadden*, the State sought to admit a tape recording of a jailhouse phone conversation among three individuals. *Id.* at 752. One of the three participants on the call testified the tape recording was a fair and accurate recording of their conversation. *Id.* at 753. Consequently, when examining the common law foundational requirements for the admission of a tape recording, this Court found "the fact a tape recording exists demonstrates the device was capable of recording[.]" *Id.* Additionally, the participant's testimony about the fairness and accuracy of the recording established the recording was authentic and correct, with no changes, additions or deletions. *Id.* Finally, this Court held the existence of the recording, combined with the participant's testimony as to its fairness and accuracy, created a reasonable inference that the operator of the recording equipment was competent. *Id.*

---

[11] Section 492.304 states, in pertinent part:

> 1. In addition to the admissibility of a statement under the provisions of section 492.303, the visual and aural recording of a verbal or nonverbal statement of a child when under the age of fourteen who is alleged to be a victim of an offense under the provisions of chapter 565, 566 or 568 is admissible into evidence if:
>
> ….
>
> (3) The recording equipment was capable of making an accurate recording, the operator of the equipment was competent, and the recording is accurate and has not been altered[.]

12

Similar to *McFadden*, the video recording's existence, combined with Knudson's testimony, satisfied the requirements of section 492.304.1(3). First, the video recording's existence, combined with Knudson's testimony, as to its accuracy, demonstrated the recording device was capable of accurately recording. *See id.* Second, Knudson's testimony established the recording was accurate and had not been altered. *See id.* Finally, the recording's existence, combined with Knudson's testimony, created a reasonable inference that the operator of the equipment was competent. *See id.* Therefore, the circuit court did not plainly err by allowing the video recording's admission pursuant to section 492.304.

## Conclusion

For the reasons set forth above, the circuit court's judgment is affirmed.

_____
Robin Ransom, Judge

All concur.

13