

# In the
# Missouri Court of Appeals
## Western District

STATE OF MISSOURI,

                **Respondent,**

v.

JAMES L. MARQUIS,

                **Appellant.**

**WD75375**

**OPINION FILED:**

**OCTOBER 28, 2014**

---

**Appeal from the Circuit Court of Platte County, Missouri
The Honorable Abe Shafer IV, Judge**

**Before Division One: Joseph M. Ellis PJ., Karen King Mitchell, Anthony Rex Gabbert, JJ.**

James L. Marquis appeals the circuit court's judgment finding him guilty of three counts of possession of child pornography, one count of child abuse, and one count of endangering the welfare of a child. Marquis raises three points on appeal. First, Marquis argues that the circuit court erred in overruling his motion for a JNOV or for a new trial because there was insufficient evidence on the record to support the convictions. Second, Marquis argues that the court erred by allowing the State, over his objections, to repeatedly introduce unduly prejudicial evidence. Lastly, Marquis argues that the court erred in allowing the State to proceed in the prosecution of the class B felony of possession of child pornography because it was beyond the applicable statute of limitations. We affirm.

**Factual Background**

In December 2009, L.M. played with Marquis's video games. When Marquis found out, he grabbed her arm and threw her across the room. He hit her in the face with the Playstation, spanked her, and made her stand in the corner. Marquis took away all of L.M.'s personal items, including her books, posters, pictures, and diary.

During L.M.'s Christmas break from school, she was forced to stand in the corner from when she woke up in the morning until she went to bed at night. She was allowed to leave the corner to eat, perform chores, and use the bathroom. L.M. was given a limited time to both complete the chores and eat. Marquis drilled a hole in L.M.'s door frame and placed a video camera so that he could monitor L.M. while she stood in the corner of her room.

Upon returning from break, L.M. was called to the office at her school for skipping a class. L.M. informed the school administrator that she was scared to go home. The administrator made a report to the child abuse and neglect hotline. An investigator with the Children's Division responded to the report and interviewed L.M. about why she was scared to return home. L.M. told the investigator that she was spanked with a belt and that sometimes it left marks. L.M. also told the investigator that she stands in the corner of her room and is videotaped by a camera that is mounted on the inside of her doorframe. L.M. reported to the investigator that she would run away if she had to go home. Marquis and his wife came to the school later that day and spoke with the investigator about L.M.'s concerns about returning home. Marquis and his wife agreed to let L.M. temporarily stay at a teen shelter until L.M.'s safety could be assessed.

The investigator went to Marquis's home to assess the safety of L.M. While at the home, the investigator viewed some videotape of L.M. standing in the corner on a computer screen

2

played by Marquis.  The investigator viewed the bedroom where she observed the camera mounted on the doorframe and facing the corner of the room where L.M. would stand.

Six days later, Marquis and his wife removed L.M. from the teen shelter.  While L.M. still had to stand in the corner, L.M. was now allowed to sit while reading and doing homework. L.M. did not have to ask to leave the corner to use the restroom but still had a time limit on when she ate.  L.M. continued to receive private visits from the Children's Division on Tuesdays, during which time she informed the worker that she feared Marquis was going to kill her if she did not get out of the home.

In response to L.M.'s allegations, Detective Al Devalkenaere interviewed L.M.  Based on the fact that the police department had information that the punishment was captured digitally on a computer, the Detective applied for and was issued a search warrant to search Marquis's home. The items seized, among other things, included ten computers, twenty one hard drives, and three external hard drives.  The computers and hard drives were later transferred to the Heartland Regional Computer Forensic Lab where they were examined by John Grant.  Several weeks later, Grant contacted Detective Devalkenaere confirming that he had found numerous videos of L.M.  Grant also found images of what he believed to be child pornography on at least one of the computers.  After viewing a series of photographs, Detective Devalkenaere applied for and was issued a subsequent search warrant to search the computers for child pornography.  Thirty five images of child pornography were found on the computers.[1]  Two videos of T.L., a fourteen-year-

---

[1] These photographs on three of the ten computers contain the evidence that makes the substance of the case presently before this Court and are referred to throughout the trial and this opinion as the HP Vectra, the HP Pavilion, and the Black Homemade Computer.

old girl, were also found on the computers. One video depicts the girl taking off most of her clothing. The other shows the girl removing her underwear and being completely naked.

Subsequently, Marquis was charged with three counts of possession of child pornography (counts I, IV, and V), child abuse (count II), and endangering the welfare of a child (count III). A jury trial was held and found Marquis guilty on all five counts. The jury sentenced Marquis to eight years for count I, seven years for count II, one year for count III, six years for count IV, and six years for count V. The judge imposed consecutive sentences on all counts. Marquis appeals.

## I. Insufficiency of Evidence

In his first point on appeal, Marquis argues that the trial court erred and abused its discretion when it overruled his motion for a JNOV or, in the alternative, for a new trial because there was insufficient evidence on the record to support one of the counts of possession of child pornography[2] and the child abuse count. We find no error.

"This Court's review of a challenge to the sufficiency of evidence supporting a criminal conviction is limited to a determination of whether sufficient evidence was presented at trial from which a reasonable juror might have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt." *State v. Starkey*, 380 S.W.3d 636, 641 (Mo. App. 2012) (citing *State v. Farris*, 125 S.W.3d 382, 387 (Mo. App. 2004)). Under this standard, we accept as true all of the evidence favorable to the verdict, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Dulany*, 781

---

[2] While Marquis was charged with three counts of possession of child pornography, Marquis only appeals the sufficiency of the evidence of the class B felony charge that he possessed more than twenty images of child pornography. Thus, we do not address his other possession of child pornography counts stemming from the two videos.

4

S.W.2d 52, 55 (Mo. banc 1989). The Court gives great deference to the trier of fact and does not act as a "super juror" with veto powers. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998).

*A. Possession of Child Pornography*

The crux of Marquis's argument is that there was insufficient evidence produced at trial that on the date of his charge he knew that the child pornography was still on his computer. To support his argument, Marquis argues that twenty of the images of the photos were found solely on his HP Vectra computer and that the photos had been deleted. He further argues that the HP Vectra computer was not operational at the time of the charged offense and the computer was in storage underneath two other computers. Marquis's argument, however, is unpersuasive and misstates the facts and law.

Grant testified at trial that the program Marquis used to download the child pornography may have been completely removed from his computer and gone to unallocated space. Grant, however, did not testify that any of the images found on the computers were in unallocated space. Instead, Grant testified that he found some of the images in the recycle bin. Furthermore, Marquis testified that he downloaded these images to his computer and that he moved some of the images from one computer to the other. He further testified that the hard drives containing the images were still in his possession when the police executed their search warrant.

Despite this evidence, Marquis argues that there is no evidence that he "accessed" these images in more than three years—the statute of limitations for the possession of child pornography. Marquis's argument, however, misstates the law. Under § 573.037.1, RSMo 2000,[3] "[a] person commits the offense of possession of child pornography *if such person*

---

[3] All statutory references are to the Missouri Revised Statutes 2000, updated through the 2013 supplement unless otherwise noted.

5

*knowingly or recklessly possesses* any child pornography" of a minor child under the age of eighteen or obscene material portraying what appears to be a minor under the age of eighteen (emphasis added). This statute under which Marquis was charged does not require the State to prove when a person last accessed the child pornography. Instead, the statute provides that the State must prove that Marquis knowingly or recklessly possessed the child pornography. Marquis testified that he was an expert when it comes to computers. Thus, the jury could have inferred that if Marquis wanted the images to be completely removed from the computers he would know how to do so. Marquis further testified that he downloaded the child pornography, viewed the child pornography, and that the images were found on his computers in his home. As a result, a reasonable juror could conclude that Marquis knowingly possessed the thirty five images of child pornography on the date he was charged.

### B. Abuse of a Child

To prove abuse of a child, the State had to show that Marquis "(1) knowingly inflicted (2) cruel and inhuman punishment (3) on a child younger than 17." *State v. Biggs*, 333 S.W.3d 472, 479 (Mo. banc 2011).[4] Marquis argues that there was insufficient evidence to prove that L.M.'s punishment was "cruel and inhuman."

"[A]lthough the majority of child abuse cases involve some sort of physical injury…it is not required to be proven by any provision of the statute." *State v. Horton*, 325 S.W.3d 474, 480 (Mo. App. 2010). "[C]hild abuse is defined to prevent cruel and inhuman punishment toward children whether it results in physical injury or not." *Id.* The cruel and inhuman punishment element may be met even if the punishment used does not create a substantial risk to the life,

---

[4] In 2012, § 586.060 was amended. However, because the facts leading to the charge took place in late 2009 and early 2010 the amended statute does not apply to this case.

body, or health of a child. *State v. Dunson*, 979 S.W.2d 237, 243 (Mo. App. 1998). Furthermore, the child abuse statute is "intended to prevent abusive and punitive conduct which causes serious emotional injury to a child." *Id.*

In this case, for approximately twelve days over L.M.'s Christmas break, Marquis punished L.M. by forcing her to stand in a corner in her bedroom from the moment she woke in the morning until she went to bed at night. L.M. was allowed to move from the corner only to go to the bathroom, eat, and do the housework. However, even then, she had a limited time to eat and do the housework. To make sure L.M. did not move from the corner, Marquis placed a video camera on the door frame of her bedroom so he could monitor her from another room. L.M. testified that she became depressed and began cutting herself as a result of being forced to stand in the corner. With this evidence on the record, a reasonable juror could find beyond a reasonable doubt that forcing L.M. to stand in the corner all day with limited breaks constituted cruel and inhuman punishment as required by § 568.060.1(1).

Therefore, the trial court did not err by overruling Marquis's motion for a JNOV or for a new trial because there was sufficient evidence on the record which a reasonable juror could find beyond a reasonable doubt that Marquis possessed thirty five images of child pornography and that his punishment of L.M. was cruel and inhuman. Point one is denied.

**II. Displaying Images of Child Pornography**

In his second point on appeal, Marquis argues that the trial court erred and abused its discretion when it overruled his request for a mistrial and his motion for JNOV or for a new trial because the court allowed the State to repeatedly introduce unduly prejudicial evidence that was not legally relevant despite his objections. We find no error.

7

The trial court has broad discretion in determining the admission of evidence, and review is for abuse of that discretion. *State v. Reed*, 282 S.W.3d 835, 837 (Mo. banc 2009). A court abuses its discretion only where the court's ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Johnson*, 207 S.W.3d 24, 40 (Mo. banc 2006). "If reasonable persons may differ as to the propriety of an action taken by the trial court, then there was no abuse of discretion." *State v. Quick*, 334 S.W.3d 603, 609 (Mo. App. 2011) (citing *Reed*, 282 S.W.3d at 837).

In order to be admissible, evidence must be both logically and legally relevant. *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002). "Evidence is logically relevant if the evidence tends to make the existence of material fact more or less probable." *Quick*, 334 S.W.3d at 609-10 (citing *Anderson*, 76 S.W.3d at 276). "Evidence is legally relevant if its benefits outweigh its costs, including unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.*

In this case, the trial court admitted thirty five images of child pornography, two videos, and the still images from the two videos. When the State moved to admit enlarged hard copies of the images, Marquis objected stating that the images were not an accurate nor representative of the thumbnail-sized images that he had viewed on his computer. Marquis raised this same objection to each image as each was being admitted. The court, however, overruled each objection.

Later, after the State moved to admit all thirty five images, Marquis objected because the State had been showing the thirty five images for twenty five minutes. As a result, Marquis

8

argued that doing so was unduly prejudicial. Marquis then moved for a mistrial but the court denied his motion.

After the images of child pornography were admitted, the State began asking its expert witness about the metadata on the thirty five images. The State had its expert witness testify about the metadata of the images in order to show that Marquis did not accidentally download the child pornography. Marquis again objected to the publication of the images as the witness testified about the metadata of each image. The State responded that it was showing the images because they contained the time each image was downloaded. The court denied Marquis's request that the monitor be turned off. However, after the State asked Grant about three more images, the court asked the State to approach the bench. The court told the State that it was inclined to agree with Marquis's counsel that the State was just going through the same images as before. The State responded that it was not going to show all of the images again. The court allowed to State to proceed but warned it was getting close to having the images on the screen long enough. The State continued for approximately ten more minutes until it appears from the record that the thirty five images were not shown again until Marquis was being cross-examined. At which point, Marquis did not object.

Marquis argues that the repetitive showing of enlarged images of child pornography to the jury was unduly prejudicial. In order to prove counts I, IV, and V, the State had to prove that the photos and videos contained what appeared to be obscene material that included as a participant or observer a minor under the age of eighteen years old. *See* §§ 573.010 and 573.037. Here, the actual photos and videos were highly relevant because they evidenced their own content. *See also Quick*, 334 S.W.3d at 610.

9

"There is always, of course, a risk of prejudice to the defendant when the jury is allowed to see something" like child pornography. *Id.* Oftentimes, however, any potential prejudice may be due to the nature of the crime not the way the State presented the photos or videos. *State v. Davis*, 318 S.W.3d 618, 640 (Mo. banc 2010). Nevertheless, "the court and the State must exercise discretion so as to avoid unnecessarily inflaming or traumatizing the jury." *Quick*, 334 S.W.3d at 610. Here, the court admitted the thirty five images that were the basis of count I into evidence. When the State began going through the thirty five images a second time in order to get the metadata from each image, the court warned the State that it was getting close to showing the images on the screen too long. The court, however, allowed the State to continue a little while longer in order to show that the times on the images were similar and were consistent with a batch download. Such evidence helped the State prove that Marquis did not accidentally download the images. *See* § 573.037 (requiring that the State prove that a person knowingly or recklessly possesses child pornography). A short time later, the State stopped showing the images.

The videos which formed the basis of counts IV and V were admitted through the State's expert witness and published to the jury without the objection by Marquis. Later, T.L. was shown the videos and asked to identify herself in them. Marquis objected and the court overruled his objections. Finally, E.G., another girl in the videos, was shown still images from the videos. While Marquis did not object, the court, sua sponte, directed the State not to show the images to the jury and then said that it did not want to see any more pictures up that were duplicates. Thus, the court's initial warning followed by the sua sponte preclusion ruling showed that the court recognized the relevancy of the images and videos but also recognized the

10

possibility of unnecessarily inflaming or traumatizing the jury by allowing the images and videos to be displayed too much.

Lastly, Grant testified that he did not know the actual size Marquis viewed each image. Thus, Marquis could have viewed the images on his computers in the same 8x10 size that were shown to the jury. Nevertheless, "[t]he projection of previously admitted photographs is permissible when the enlarged photographs serve legitimate purposes." *Tisius v. State*, 183 S.W.3d 207, 215 (Mo. banc 2006). Here, the enlarged images helped to illustrate what the State's expert witnesses were talking about as they discussed the images, which were the basis of the three possession counts. *See also State v. Love*, 546 S.W.2d 441, 451 (Mo. App. 1976) (stating that photographs "possess probative value if they enable the jury to better understand the facts elicited from various state witnesses.").

Therefore, the court did not abuse its discretion by allowing the State to show enlarged images of the child pornography on multiple occasions because the court's initial warning followed by the sua sponte preclusion ruling showed that the court recognized the relevancy of the images and videos but also recognized the possibility of unnecessarily inflaming or traumatizing the jury by allowing the images and videos to be displayed too much. Furthermore, there was no evidence on the record regarding the actual size Marquis viewed each image. Even if the size of the images shown to the jury were larger then Marquis viewed them, the enlarged images helped to illustrate what the State's expert witnesses were testifying to about each image. Thus, we find no error. Point two is denied.

### III. Statute of Limitations

In his last point on appeal, Marquis argues that the trial court erred and abused its discretion in allowing the State to prosecute him on the class B felony possession of child

pornography because the applicable statute of limitations had run. Marquis argues, without citation of relevant authority, that the statute of limitations began to run on the last date on which he accessed the relevant images on his computer. We decline to review this point.

Marquis concedes that he failed to raise at trial that the applicable statute of limitations had run and requests plain error review. However, the lapse of the statute of limitations is not jurisdictional, but is an affirmative defense. *Longhibler v. State*, 832 S.W.2d 908, 911 (Mo. banc 1992). Thus, as an affirmative defense, the statute of limitations "must be raised before final disposition of the case, whether by conviction or plea, or it is waived." *Id.* at 910. Here, Marquis failed to raise this affirmative defense before final disposition of the case. Therefore, Marquis's statute of limitations claim is waived and we decline to review the claim for plain error. Point three is denied.

We conclude, therefore, that the circuit court did not err in overruling Marquis's motion for a JNOV or for a new trial because there was sufficient evidence on the record which a reasonable juror could find beyond a reasonable doubt that Marquis possessed thirty five images of child pornography and that his punishment of L.M. was cruel and inhuman. We further conclude that the court did not abuse its discretion by allowing the State to show enlarged images of the child pornography on multiple occasions because the court's initial warning followed by the sua sponte preclusion ruling showed that the court recognized the relevancy of the images and videos but also recognized the possibility of unnecessarily inflaming or traumatizing the jury by allowing the images and videos to be displayed too much. Furthermore, there was no evidence on the record regarding the actual size Marquis viewed each image. Even if the size of the images shown to the jury were larger then Marquis viewed them, the enlarged images helped to illustrate what the State's expert witnesses were testifying to about each image. Finally, we

decline to review Marquis's final point because he failed to raise the statute of limitations claim before the trial court.  Therefore, as that claim is waived, we decline to review the claim for plain error.  We affirm the circuit court's judgment.

Anthony Rex Gabbert, Judge

All concur.