STATE of Missouri, Respondent,

v.

Trevor C. FELDT, Appellant.

No. ED 103401

Missouri Court of Appeals, Eastern District, **DIVISION FOUR**.

Filed: March 7, 2017

Srikant Chigurupati, St. Louis, MO, for Appellant.

Josh Hawley, Christine Katherine Lesick, Jefferson City, MO, for Respondent.

## OPINION

James M. Dowd, Presiding Judge

Trevor C. Feldt was found guilty after a bench trial in the Circuit Court of the City of St. Louis of two counts of the class B felony of possession of child pornography and was sentenced to two concurrent

terms of five years in prison. Feldt appeals asserting five points of error: (1) that the trial court plainly erred by conducting a bench trial without first obtaining a constitutionally adequate waiver of his right to a jury trial; (2) that the court abused its discretion by allowing the State to file an amended information that Feldt claims charged in Count II a different offense than any charged in the earlier substitute information; (3) that the three-year statute of limitations for the class B felony of possession of child pornography had run and thus the amended information charged a time-barred offense in Count II; (4) that the court abused its discretion by denying his motion to suppress the evidence regarding his possession of a video of child pornography on a computer seized pursuant to a warrantless search of the basement of a friend's house in which Feldt had been residing for twelve days; and (5) that there was insufficient evidence to support his conviction on Count I of the class B felony of possession of child pornography. We reverse the judgment of the trial court and remand for a new trial consistent with this opinion.

## Factual and Procedural Background

The Investigation

In December 2010, a detective with the St. Louis Metropolitan Police Department's Cyber Crimes Unit, while conducting an undercover investigation, discovered an Internet Protocol (IP) address that had downloaded child pornography. The detective served on AT&T, the IP address's internet service provider, a subpoena for information about the IP address, and AT&T disclosed that defendant Feldt was the owner of the IP address.

On May 5, 2011, another detective in the Cyber Crimes Unit contacted AT&T and discovered that the IP address remained active and was assigned to a residence on Tamm Avenue in the City of St. Louis. The detective determined that in the Missouri Department of Revenue's public records, the Tamm Avenue residence was listed as Feldt's address. So, on May 9, 2011, based on this information, the detective obtained a search warrant for the Tamm Avenue residence.

On May 10, 2011, police officers executed the search warrant. They learned from the homeowner of the Tamm Avenue residence that Feldt had been living there but the homeowner required Feldt to move out about two weeks prior due to non-payment of rent and other issues. The homeowner allowed the officers into the residence and showed them electronics belonging to Feldt, including a computer (the "Tamm Avenue computer") that he had left behind at the residence, and also mentioned that Feldt had taken clothes and another computer with him when he left. The police seized the Tamm Avenue computer and other electronics.

The officers then contacted Feldt, who agreed to accompany them to the Tamm Avenue residence. There Feldt was read his *Miranda* rights and agreed to speak with the investigating officers. Feldt told them that after he moved out of the Tamm Avenue residence, a friend, Todd Schaller, allowed Feldt to move into his home on Lami Street in the City of St. Louis. Feldt told the officers that his personal belongings at the Lami Street residence included the computer (the "Lami Street computer") he had taken with him when he left the Tamm Avenue residence.

The officers told Feldt that detectives were on their way to Schaller's Lami Street residence and asked him whether they would find child pornography on the Lami Street computer. Feldt admitted that they would find child pornography on that computer. When the detectives arrived at

Schaller's house, Schaller gave them consent to search the house including the basement where Feldt had been staying. There they seized the Lami Street computer and other electronics.

Feldt was arrested and taken to the police station where he was again read his *Miranda* rights. During questioning regarding the seized computers, Feldt again waived his *Miranda* rights and made incriminating statements. Feldt told the detective that he owned the computers seized from the Tamm Avenue and Lami Street properties and that he had placed child pornography on both computers. Nearly three years later, in April 2014, a forensic examination of the computers conducted pursuant to a search warrant obtained on May 19, 2011, and bearing Feldt's signed consent as to the Lami Street computer, confirmed the presence of child pornography on both computers.

Feldt's Prosecution

On May 6, 2014, the State charged Feldt with two counts of the class C felony of possession of child pornography. The charging document alleged that on May 10, 2011, Feldt knowingly possessed a video of child pornography on the Tamm Avenue computer (Count I), and that he knowingly possessed child pornography in an unspecified format on the Lami Street computer (Count II).[1] On June 5, 2014, Feldt was indicted for the same criminal conduct by a grand jury.

On May 18, 2015, the State filed a substitute information again charging Feldt with two counts of the class C felony of possession of child pornography, but this time in Count II, the State clarified that the child pornography on the Lami Street computer was a "video."

On May 21, 2015, Feldt filed a motion to suppress his statements to the police and the evidence of child pornography obtained from his seized computers and electronics, including the evidence found on the Lami Street computer, which was seized pursuant to a warrantless search.

On June 2, 2015, a bench trial was held. Before trial began, Feldt entered into a stipulation with the State "that the videos found on the HP Pavillion [*sic*] computer from [the Tamm Avenue residence] and on the Compaq Presario from [the Lami Street residence], were in fact child pornography of people less than eighteen years of age."

Then the court addressed a lingering pretrial concern. The court noted that it had misgivings about the substitute information because it cited the wrong statute, § 573.035[2], which pertains to the crime of *promoting* child pornography, when Feldt was being charged with *possession* of child pornography. The court also stated that since the State was charging Feldt in both counts with possession of child pornography in *video* format in violation of § 573.037, the charges were class B felonies, not class C felonies as the substitute information provided. To resolve these issues, the court over Feldt's objection granted the State leave to amend the in-

---

1. Since the charged crimes carried a three-year statute of limitations under § 556.036.2(1) (RSMo 2012) and Feldt left the Tamm Avenue residence more than three years before the State's May 6, 2014 charges, the State had to prove that Feldt constructively possessed the Tamm Avenue computer while living on Lami Street. *See State v. Roggenbuck*, 387 S.W.3d 376, 382 (Mo.banc 2012)

(explaining that where child pornography is not found on the defendant's person, the State must prove "constructive possession"—at a minimum, that the defendant had "access to and control over the area where the pornography was found").

2. All statutory references are to RSMo 2012 unless otherwise indicated.

formation, and the State orally amended the information to charge Feldt with two class B felony counts of possession of child pornography.

At the close of the State's evidence, Feldt filed a motion for judgment of acquittal on Count I, asserting that the State failed to prove beyond a reasonable doubt that he had constructively possessed on May 10, 2011, the child pornography on the Tamm Avenue computer. The court denied this motion and took under submission Feldt's motion to suppress. Following the trial, the court overruled the motion on its merits, entered findings of fact and conclusions of law, and found Feldt guilty of both of the class B felony offenses charged in the amended information. The court sentenced Feldt to two concurrent terms of five years in prison. This appeal follows.

## Point I: The Denial of Feldt's Right to a Jury Trial

In his first point on appeal, Feldt asserts that the trial court plainly erred by conducting a bench trial without first obtaining a constitutionally adequate waiver of his right to a jury trial. We agree.

### Standard of Review and Controlling Law

■ We exercise our discretion to review for plain error only where the appellant asserting error establishes facially substantial grounds for believing that the trial court's error was evident, obvious, and clear, and that manifest injustice or a miscarriage of justice has resulted. Rule 30.20 [3]; *State v. Jones*, 427 S.W.3d 191,195 (Mo.banc 2014). A criminal defendant has the constitutional right to a trial by jury under the Sixth Amendment (enforceable against the States by virtue of the Fourteenth Amendment, *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)), and under §§ 18(a) and 22(a) of Article I of the Missouri Constitution. Violation of the defendant's constitutional right to a jury trial constitutes manifest injustice under plain error review. *State v. Williams*, 417 S.W.3d 360, 364 (Mo.App. E.D. 2013); *State v. Freeman*, 189 S.W.3d 605, 613 (Mo.App.W.D. 2006) (citing *State v. Cooper*, 108 S.W.3d 101, 106 (Mo.App. E.D. 2003)).

■ The right to a jury trial may be waived by the defendant with the consent of the trial court, provided that the waiver is knowing, voluntary, and intelligent. *Williams*, 417 S.W.3d at 362–63 (citing Mo. Const. art. I, § 22(a)). "In felony cases such waiver by the defendant shall be made in open court and entered of record," Rule 27.01(b), with "unmistakable clarity," *Williams*, 417 S.W.3d at 363 (citing *State v. Baxter*, 204 S.W.3d 650, 653 (Mo.banc 2006)). In the absence of an unmistakably clear waiver in a felony case, remand for a new trial is justified under plain error review. *See State v. Beam*, 334 S.W.3d 699, 704 (Mo.App.E.D. 2011) (citing *Freeman*, 189 S.W.3d at 609).

### The State's Waiver Argument

Here, the State points to four facts to support its argument that the record shows with unmistakable clarity that Feldt knowingly, voluntarily, and intelligently waived his right to a jury trial: (1) counsel wrote in a motion filed with the trial court that on May 13, 2015, the State and defense agreed to advance the case for a bench trial the week of June 1, 2015; (2) the case's docket sheet reflected that the case was accelerated to the June 1 docket for a bench trial; (3) after being found guilty and sentenced, Feldt testified that before trial he had discussed with counsel whether to have a jury trial; and (4) Feldt

---

**3.** All rules references are to the Missouri Supreme Court Rules (2016).

did not until he appealed object to having a bench trial.

While these references support the conclusion that Feldt may have been aware that a bench trial was planned in his case, the issue before us is whether the record evinces with unmistakable clarity that Feldt was aware of and waived his constitutional right to a jury trial. We find no such awareness or waiver in the record.

Applicable Case Authorities: *Williams*, *Freeman*, and *Beam*

Three recent Missouri cases, *Williams*, *Freeman*, and *Beam*, support the conclusion that the record here fails to establish that Feldt waived his right to a jury trial.

In *Williams*, 417 S.W.3d at 363, this Court concluded that the record must show "something more" than a "bare assertion by counsel" that the defendant was waiving his right to a jury trial, because otherwise it is not unmistakably clear that the defendant waived the right. Here, the first fact cited by the State—that counsel wrote in a motion that Feldt had agreed to advance the case for a bench trial—is at most a "bare assertion by counsel" that Feldt would waive his right to a jury trial, since Feldt did not sign the motion or otherwise indicate his personal intention to waive the right.

In *Freeman*, 189 S.W.3d at 610, defendant's counsel wrote in a motion that a bench trial had been scheduled. The court held, however, that the fact that *counsel* may have waived a jury trial did not demonstrate with unmistakable clarity that the defendant knowingly, voluntarily, and intelligently waived his right. *Id.* The court also held that it was insignificant that docket sheets showed that a bench trial was scheduled because the sheet did not evidence that the defendant had *personally* waived his right to a jury trial. *Id.* And the court determined that it was of no moment that the defendant failed until his appeal to object to having a bench trial, since neither the trial court nor anyone else addressed in open court, on the record, and in the presence of the defendant whether he was waiving his right to a jury trial. *Id.* at 610–11. We find that the *Freeman* court's conclusions apply with equal force to the similar facts cited here by the State.

Finally, in *Beam*, 334 S.W.3d at 705, this Court held that the fact that counsel may have requested a bench trial in the defendant's presence, without more, did not demonstrate with unmistakable clarity that the defendant knowingly, voluntarily, and intelligently waived her right to a jury. This Court based its holding on findings that the defendant was never questioned about her understanding of her right to a jury trial or her waiver of such right, by either her counsel or the trial court; that the term "waiver" was never used in the defendant's presence on the record; and that the record contained no evidence that any attempt was made to determine whether the defendant understood the implications of a "bench" trial with respect to her right to a trial by jury. *Id.*

The Case at Bar

■ Here, the record evinces no discussion with the defendant, or any mention at all, of the *right* to a jury trial, or of the *waiver* of the right. The record shows merely that after Feldt was found guilty and sentenced, he responded affirmatively when asked by the trial court whether before trial he spoke with counsel about whether to have a jury trial. Critically, the record does not show that counsel informed Feldt that he had a right to a jury trial, or that counsel explained to Feldt that he could not be tried by the court unless he knowingly, voluntarily, and intelligently waived the right. The record contains no evidence that an attempt was

made to determine whether Feldt understood the implications of having a bench trial. It is not unmistakably clear from the record that Feldt knowingly, voluntarily, and intelligently waived his right to a jury trial—indeed, it is not clear that he had even the minimum understanding required to have intended to do so. We cannot find that Feldt clearly intended to give up a right of which the record does not even make clear he was aware. Tellingly, here, as in *Freeman*, the State does not attempt to specify *when* the defendant might have waived his right to a jury trial.

■ We note that in circumstances such as these, as explained in *Beam*, 334 S.W.3d at 706, the lack of clarity presented by the record could have been avoided had either counsel noted on the record and in the defendant's presence that the defendant was voluntarily waiving his right to a jury trial, or had the trial court simply asked the defendant, on the record, whether he understood the right and whether he was waiving it. Neither of these practices places an undue burden on the criminal justice system, and they require only minimal effort to assure the guaranty of a fundamental constitutional protection. *Id.* Indeed, we observe that it would hardly have been more burdensome for the trial court to adhere even to the very *best* practice, here: to question the defendant on the record to ensure he understands what is lost in the waiver, has discussed the issue with defense counsel, and voluntarily intends to waive the right. *See Williams*, 417 S.W.3d at 363–64 (citing *Baxter*, 204 S.W.3d at 654–55) (describing best practice for waiver).

## The State's Harmless–Error Arguments

1. *The State Argues that Feldt's Admissions Render the Constitutional Violation Harmless.*

■ The State argues that the trial court's failure to shoulder the burden of protecting Feldt's fundamental right to a jury trial was harmless because Feldt admitted to the police that his two computers contained child pornography. The State cites *State v. Hatton*, 918 S.W.2d 790 (Mo. banc 1996), and *State v. Martin*, 940 S.W.2d 6 (Mo.App.W.D. 1997).

In *Hatton*, the defendant was charged with distributing a controlled substance within 1,000 feet of public housing and the defendant "admitted selling crack" there. 918 S.W.2d at 792, 795. The defendant argued that the trial court plainly erred in "accepting" his waiver of the right to a jury trial. *Id.* at 795. The record showed that at the beginning of trial, defense counsel in the defendant's presence announced that the defendant was "waiving jury." *Id.* The defendant did not object or otherwise protest. *Id.* On appeal, he argued that counsel's representation that he was waiving the right to a jury trial could not have been adequate to do so because the constitution requires that the trial court conduct an independent examination of the defendant and make a separate determination that he intentionally relinquished his right to a jury trial. *Id.*

The Missouri Supreme Court did not respond directly to this argument. *Id.* Instead, the Court held that although the defendant's right to a jury trial likely had been denied because the trial court should have conducted a more thorough examination to determine the defendant's understanding of his waiver of the right to a trial by jury, the judgment of conviction should be affirmed because the defendant's admission to selling crack was "sufficient to remove any concern that the waiver of the jury trial resulted in prejudice to [him]." *Id.*

In *Martin*, the defendant was charged with aggravated stalking and admitted

that he made threatening phone calls to the victim, was physically violent toward her, and that her belief that he could become violent was reasonable. 940 S.W.2d at 8. The defendant argued that the trial court plainly erred in failing to ascertain on the record whether he knowingly, voluntarily, and intelligently waived his right to a trial by jury because the record did not reflect with unmistakable clarity an affirmative waiver by him of the right. *Id.* at 9. Without deciding whether the defendant's right to a jury trial had been denied, the Western District rejected the defendant's request for plain error review. *Id.* at 10. The court's only explanation was that the defendant "failed to show that a manifest injustice or miscarriage of justice ha[d] resulted." *Id.*

■ The results in *Hatton* and *Martin* show that Missouri appellate courts may, within their discretion under Rule 30.20, decline to afford extraordinary relief based on plain error to defendants who, though there may be some question whether they have been deprived of their right to a jury trial, admit to having engaged in the very conduct with which they are charged. But these cases do not mean that Feldt did not suffer manifest injustice. There are at least two critical distinctions between them and the instant case.

First, at least as to Count I, Feldt did not admit to engaging in the conduct charged by the State—possessing the child pornography on the Tamm Avenue computer—but instead argued, as he does in his fifth point on appeal, that the State did not present sufficient evidence that, on May 10, 2011, in particular, he constructively possessed the child pornography on that computer. Indeed, he testified that by that date the computer was trash, and that he no longer had access to it because he no longer lived at the Tamm Avenue residence. In *State v. Rulo*, 976 S.W.2d 650,

652 (Mo.App.S.D. 1998), the Southern District found that where the defendant did not admit to engaging in the conduct with which he was charged, *Hatton* and *Martin* were inapplicable and the defendant suffered manifest injustice from the denial of his right to a jury trial, regardless of how plausible his alibi evidence was, because a jury would have been free to believe the defendant's testimony and acquit him. The same conclusion applies here.

Second, unlike in *Hatton* and *Martin*, here the record shows conclusively that the defendant's right to a jury trial was denied. In *Martin*, the court declined to review whether the defendant's right was denied. In *Hatton*, defense counsel stated in the defendant's presence that he was "waiving jury," but here the record contains no mention of waiver or of the defendant's right to a jury trial and the effect of a bench trial on it. And as *Rulo* and several more recent Missouri cases have observed, *see, e.g.*, *Freeman*, 189 S.W.3d at 613, where the record demonstrates that the trial court failed to comply with the requirements of Rule 27.01(b) that a waiver of a trial by jury be made in open court and entered on the record, that failure warrants reversal and remand for a new trial.

■ Multiple Missouri courts, including those in *Freeman*, 189 S.W.3d at 613, and *Rulo*, 976 S.W.2d at 653, have found that where the record is void of any reference to jury waiver, to deny the defendant's claim of plain error based on the deprivation of his right to a jury trial would impermissibly ignore the clear dictates of Rule 27.01(b). It would also wholly disregard the true nature of the defendant's fundamental right to a jury trial: "Where the right to a trial by jury is *altogether denied*, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt;

the error in such a case is that *the wrong entity judged the defendant guilty.*" *Freeman*, 189 S.W.3d at 613 (Mo.App.W.D. 2006) (emphasis added) (internal quotation marks omitted) (quoting *Rose v. Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (noting that such an error "necessarily render[s] a trial fundamentally unfair")). That is why, upon finding a violation of the defendant's right to a jury trial, this Court has disregarded in determining whether the violation constitutes a manifest injustice that the defendant clearly has committed the offenses with which he has been charged. *See, e.g., Williams*, 417 S.W.3d at 362–64 (holding that the defendant suffered manifest injustice by the denial of his right to a jury trial even where he had been charged with criminal nonsupport and the evidence showed clearly that he had made insufficient support payments, and no payments to the Family Support Payment Center as required by court order).

Of course, under Rule 30.20, Missouri appellate courts are endowed with discretion in reviewing claims of plain error and need not correct manifest injustice if—like the *Martin* court—they are not convinced that the defendant is entitled to the sort of extraordinary relief afforded by plain-error review. But the *trial court* has no discretion to decide that it will not strictly observe the defendant's fundamental constitutional right to a jury trial.

### 2. The State Asserts that Feldt's Failure to Prove that He Would Have Had a Jury Trial Precludes Reversal.

The State also argues that under *State v. Ramirez*, 143 S.W.3d 671, 676 (Mo.App. W.D. 2004), Feldt must accept the results of his structurally-flawed trial because he has not proved that had he been adequately apprised of his right to a jury trial, he would have insisted on having his guilt or innocence determined by a jury instead of by the trial court. We reject this argument.

In *Ramirez*, the Western District found that to be entitled to relief on direct appeal under the plain error rule, a criminal defendant claiming a denial of his right to a jury trial has the burden to show not only that his waiver was not knowingly, voluntarily, and intelligently made, but also that had he been adequately apprised of this right, he would have insisted on having his guilt or innocence determined by a jury instead of by the court. *Id.* at 676–77. Nevertheless, now–Chief Justice Breckenridge, writing two years after *Ramirez* for the Western District in *Freeman*, 189 S.W.3d at 611, clarified that the *Ramirez* court's finding in this regard "was dictum and, in any event, was clearly incorrect because the standard applied, taken from this court's decision in *Luster* [*v. State*, 10 S.W.3d 205, 212 (Mo.App.W.D. 2000)], is inapplicable in the context of a direct appeal and should not be followed." Chief Justice Breckenridge pointed out that "*Luster* involved a defendant's claim for *post-conviction relief* and set forth this requirement as the necessary proof to satisfy the prejudice prong of [the] *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) test on a claim for ineffective assistance of counsel." *Freeman*, 189 S.W.3d at 611 n.6 (emphasis added) (citing *Luster*, 10 S.W.3d at 212).

The fundamental differences between a claim for post-conviction relief based on the ineffective assistance of counsel and a right-to-a-jury-trial challenge on direct appeal make clear why it would be improper to require Feldt to prove that he would have insisted on a jury trial. As explained in *Strickland*, 466 U.S. 668, 691–92, 104 S.Ct. 2052, 80 L.Ed.2d 674, "[a]n error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment[;] [t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." Accordingly, in an ineffective-assistance-of-counsel case, the trial court and any reviewing appellate court defers to defense counsel's strategic judgment where the movant fails to establish that if counsel had not made particular mistakes, there is at least a reasonable probability that the outcome of the trial would have been different. *Cusumano v. State*, 495 S.W.3d 231, 235 (Mo.App.E.D. 2016).

On the contrary, the denial of a defendant's right to a jury trial necessarily renders a bench trial fundamentally unfair and makes it impossible to justify reliance on its outcome. *See, e.g., Beam*, 334 S.W.3d at 706 (equating "the violation of [the defendant's] constitutional right to a jury trial" with "manifest injustice"); *Freeman*, 189 S.W.3d at 613 (same). There simply is no possibility that an actual denial of the defendant's right to a jury trial had no effect on the trial court's judgment; because the protection of the right is not a matter of trial court discretion, where the right is denied there is no question under the Sixth Amendment, the Missouri Constitution, or Rule 27.01 that the wrong entity has found the defendant guilty and has thus deprived him of one of his fundamental rights. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to ... trial, by an impartial jury ...."); Mo. CONST. art. I, § 22(a) ("[T]he right of trial by jury as heretofore enjoyed shall remain inviolate[,] provided that ... in every criminal case any defendant may, with the assent of the court, waive a jury trial and submit the trial of such case to the court, whose find-

ing shall have the force and effect of a verdict of a jury."); Rule 27.01(a) ("All issues of fact in any criminal case shall be tried by a jury to be selected, summoned and returned in the manner prescribed by law, unless trial by jury be waived as provided in this Rule.").

So here the trial court had no discretion—and we need not defer to its decision—to disregard Feldt's fundamental right to a jury trial because he failed to insist on such a trial, or because on appeal he might, as he does here, fail to prove that he would have insisted on a jury trial had he been adequately apprised of his right to one.

Point granted.

### Point II: The Amended Information

■ In his second point on appeal, Feldt contends that the court abused its discretion by allowing the State to file an amended information that he claims charged in Count II a different offense— the class B felony of possession of child pornography, for possessing the video of child pornography he stipulated was found on the Lami Street computer—than any of the class C felonies charged in the earlier substitute information in this case. The State responds that the amended information did not charge a different offense but merely corrected a clerical error as to the proper classification of the charge against Feldt in Count II of the substitute information for possessing the video of child pornography found on the Lami Street computer. We find no abuse of discretion.

■ The trial court's decision to permit the State to amend an information is reviewed for an abuse of discretion. *State v. Durham*, 371 S.W.3d 30, 34 (Mo. App.E.D. 2012) (citing *State v. McGinness*, 215 S.W.3d 322, 324 (Mo.App.E.D. 2007)). The trial court abuses its discretion when

its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful, deliberate consideration. *State v. Bell*, 488 S.W.3d 228, 249 (Mo.App.E.D. 2016) (citing *State v. Roggenbuck*, 387 S.W.3d 376, 382 (Mo.banc 2012)). Where, in deciding whether to allow an amendment to the information, the court has interpreted a Missouri statute or a rule of the Missouri Supreme Court, we review the court's *interpretation* de novo in accordance with our established standards cited in, for example, *McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 662 (Mo.banc 2014).

Rule 23.08 permits an information to be amended or substituted for an indictment at any time before verdict if no additional or different offense is charged. Here, the felony classification—class B or class C—hinges generally on whether the child pornography is a video or moving image (class B) or a still image (class C). Section 573.037.1 provides that a person commits the offense of possession of child pornography if such person knowingly or recklessly possesses any child pornography of a minor less than eighteen years old or obscene material portraying what appears to be a minor less than eighteen years old. Section 573.037.2 states that the offense of possession of child pornography is a class C felony if the person possesses one still image of child pornography or one obscene

still image, but that the offense is a class B felony if the person possesses child pornography or obscene material comprised of one motion picture, film, videotape, videotape production, or other moving image.

The State and the grand jury initially charged Feldt with the class C felony of possession of child pornography for that found on the Lami Street computer but failed to specify that this pornography was a video. The State later filed a substitute information clarifying that Feldt was charged with possessing the "video" of child pornography found on the Lami Street computer.[4] Then, just before Feldt's trial began, the trial court raised concerns that the State's substitute information failed to cite the correct statute for, or to correctly classify, the charged offenses. The court allowed the State to orally amend the information to charge Feldt under the correct statute with the class B felony of possession of child pornography for possessing the video found on the Lami Street computer.

While Feldt did not object to correcting the statute cited, he did object to amending to class B felonies the charges against him, Feldt's counsel argued that the State's class C felony charges in the substitute information each properly charged Feldt with a *lesser included offense* of the class B felony of possession of child pornography, and that thus each of the State's oral amendments charged Feldt with a

---

4. Feldt argues that the State's substitute information was a nullity and should not be considered because the State never sought nor was granted leave to file it. The State responds that Feldt never objected to the filing, two weeks before trial, of the substitute information and thus, under Rule 24.04(b)(2), has waived any objection to our consideration of the substitute information in determining whether the trial court abused its discretion in granting the State leave to orally amend the substitute information just before the trial began. We agree with the State.

In *State v. Simpson*, 846 S.W.2d 724, 728 (Mo.banc 1993), the Missouri Supreme Court held that the accused waived his right to object to the indictment or information where he failed to object by motion before trial and did not object that the indictment or information failed to show jurisdiction or to charge an offense. Finding no objection in the record to the filing of the substitute information, we follow *Simpson* here.

greater and, in fact, different offense, in violation of Rule 23.08.

The State countered that § 573.037 affords no discretion in charging the defendant with a felony for possessing a *video* of child pornography. On the State's reading of the statute, the offense must be classified as a class B felony because the statute defines it as such—there is no option to charge a class C felony for such conduct. The trial court agreed with the State.

In light of our own interpretation of Rule 23.08 and § 573.037, we find that the trial court did not abuse its discretion in adopting the State's position and allowing the State to amend its information to charge Feldt with the class B felony.

 Based on the plain language of § 573.037, we, like the trial court, disagree with Feldt's argument that the State could have charged him with either a class C or class B felony. Section 573.037 provides that the offense of possession of child pornography simply is a class B felony if the person possesses child pornography or obscene material comprised of any form of video or "moving image." We see no reason to look beyond this clear statement because where the defendant possesses child pornography in the format of a "moving image," it would be an outright contradiction to suggest that he thus possesses a "still image" of such. Moreover, there is no Missouri authority indicating that the class C felony of possession of child pornography, defined as possessing one still image of child pornography or obscenity, is a lesser included offense of the class B felony of possession of a video of child pornography.

We also agree with the trial court's reading of Rule 23.08 that the correction of a clerical error in the charging document's classification of an offense does not necessarily mean that a different charge has been brought. Thus, we agree that because

the underlying allegations of the class C felonies charged in the substitute information were exactly the same as those of the class B felonies charged in the amended information, the State's amendments—which corrected solely its clerical errors as to the correct classification of its charges against Feldt for possessing videos of child pornography—did not charge a different offense.

Here, the State's previously-filed substitute information clarified that Feldt was being charged in Count II for possessing a *video* of child pornography. The State's principal evidence that Feldt possessed child pornography on the Lami Street computer always consisted of one of the videos that was found on his seized computers and was of child pornography. Moreover, Feldt did not object to the State's amendment to Count II by claiming, for instance, that he possessed a still image, and not a video, of child pornography on the Lami Street computer, nor did he ever object to any of the class C felony charges against him on the grounds that he possessed a video, and not a still image, of child pornography.

Indeed, Feldt never objected on the grounds that he was being charged for *different criminal conduct*—as opposed to just being charged with a differently-classified offense—than he had actually committed, or for which he had already been charged. So when the State orally amended its charge to a differently-classified offense for the *same* wrongful conduct, Feldt's only argument that the State had committed more than a mere clerical error and had impermissibly charged him with a different offense was based on the fallacy that he could properly be charged with a class C felony for possessing a video of child pornography because it was a lesser included offense of the class B felony. In

fact, there is no lesser included class C felony for such conduct, and Feldt cannot show that the State committed anything but a clerical error in charging him with a class C felony for possessing the video of child pornography on the Lami Street computer.

Accordingly, we cannot find that the trial court's ruling here is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful, deliberate consideration. Rather, the ruling is consistent with the logic of the circumstances, and shows diligent consideration of each side's arguments as to this issue within the context of the whole record.

Point denied.

### Point III: Feldt's Statute–of–Limitations Argument Against His Conviction on Count II

In his third point on appeal, Feldt claims that the three-year statute of limitations for the class B felony of possession of child pornography had run and thus the amended information charged a time-barred offense in Count II. Feldt's claim of error as to this point is based on his argument in Point II that the State's amended information charged a different offense than any charged in the substitute information or in any earlier charging document filed in this case.

Specifically, Feldt contends that the amended information charged in Count II a different, time-barred offense because the State's initial complaint, the only charges filed within three years of the criminal conduct alleged, did not correctly classify the offense or cite the correct statute for charging Feldt for possessing the video of child pornography found on the Lami Street computer. Based in part on our analysis in addressing Point II, we disagree with Feldt's statute-of-limitations argument because we find that the State's initial complaint charged him with the same offense as all the subsequent charging documents, including the amended information, and thus tolled the limitations period throughout the prosecution.

■ We review de novo whether a prosecution for a crime is barred by the statute of limitations. *State v. Corley*, 251 S.W.3d 416, 418 (Mo.App.S.D. 2008) (citing *State v. Rains*, 49 S.W.3d 828, 831 (Mo. App.E.D. 2001)). The three-year statute of limitations set forth in § 556.036.2(1) applies to the felony offense of possessing child pornography. *State ex rel Greufe v. Davis*, 407 S.W.3d 710 (Mo.App.W.D. 2013). The limitations period is tolled and does not run during any time period in which a prosecution against the accused for an offense is pending in the state. *Corley*, 251 S.W.3d at 418 (citing § 556.036.6(3)). A prosecution for an offense is pending once a complaint or indictment is filed. § 556.036.5.

■ However, the limitations period will not be tolled for a "different offense" than those for which charges have been filed. *Corley*, 215 S.W.3d at 418. Instead, any new information or indictment "must charge the same defendant and substantially the same offense" in order for the period of limitation to have been tolled for the newly-charged offense during the time a prosecution was pending on an earlier information or indictment. *Id.* In determining for statute-of-limitations purposes whether subsequent charges cite the "same offense," we look to see whether (1) the later charge contains essentially the same facts as those included in the earlier, demonstrating that the later charged offense arose out of the identical act or transaction; (2) the later charge is derived from the same statute as the earlier; and,

finally, (3) the later charged offense is a different level of criminal offense from that charged earlier—e.g., one is a felony and the other a misdemeanor. *Id.* at 421.

Here, beginning with the initial complaint, the charges against Feldt for possessing child pornography always contained a reference to the particular pornographic content of the video of child pornography found on the Lami Street computer. As we noted in addressing Point II, this video was always the State's principal evidence that Feldt possessed child pornography on the Lami Street computer. Whether for these reasons or some other, Feldt does not and has never contested whether the later charges against him arose out of the same act or transaction as those in the initial complaint.

Next, although the State in its amended information cited a different statute than in its initial complaint, the different citation merely corrected a clerical error in the substitute information that originated in the initial complaint, and was not rooted in any substantive distinction. In essence, the charge in Count II of the amended information derived from the same statute as that in Count II of the initial complaint, § 573.037, which forbids the possession of a video of child pornography.

And finally, in an analogous manner, although the amended information charged a differently-classified offense than the initial complaint did, the alteration again merely corrected a clerical error in the substitute information that originated in the initial complaint. As we determined in addressing Point II, the change in classification did not effect any substantive change in the charges against Feldt, nor could it have, since as a matter of law the offense could not properly be classified as it had been in the initial complaint. The charge in Count II of the amended information was, on a proper reading of § 573.037, essentially and necessarily of the same level as that charged in Count II of the initial complaint.

We hold therefore that since the State in Count II of its amended information charged Feldt with the same offense as in Count II of its initial complaint, the statute of limitations was tolled and the prosecution on that charge was not time-barred.

Point denied.

### Point IV: The Denial of Feldt's Motion to Suppress

In his fourth point on appeal, Feldt argues that the court abused its discretion by denying his motion to suppress the evidence regarding his possession of a video of child pornography on the Lami Street computer seized pursuant to a warrantless search of Todd Schaller's basement. We disagree because we find that the investigating police officers who seized the computer and discovered the evidence Feldt has moved to suppress could reasonably have believed that Schaller had the authority to consent to a search of the basement of his home.

We review for abuse of discretion the trial court's decision whether to grant a motion to suppress. *State v. Selvy*, 462 S.W.3d 756, 764 (Mo.App.E.D. 2015) (citing *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo.banc 1990)). We reverse only if the court's decision is clearly erroneous. *Id.* (citing *Milliorn*, 794 S.W.2d at 183). Our review is limited to determining whether the court's decision is supported by substantial evidence. *Id.* (citing *State v. Stover*, 388 S.W.3d 138, 149 (Mo.banc 2012)).

We view the facts and any reasonable inferences therefrom in the light most favorable to the court's ruling and

disregard any contrary evidence and inferences. *Id.* (citing *State v. Johnson*, 354 S.W.3d 627, 631–32 (Mo.banc 2011)). We defer to the trial court's determinations of the weight to be given to the evidence and of the credibility of the witnesses. *Id.* Nevertheless, the ultimate issue of whether the Fourth Amendment was violated is a question of law that this Court reviews de novo. *Id.* Thus, although we review for abuse of discretion the trial court's broader decision whether to suppress evidence, we review de novo its more specific determinations whether a challenged search was permissible and whether the exclusionary rule applies to evidence obtained through that search. *Id.* (citing *Johnson*, 354 S.W.3d at 632).

■ Although the Fourth Amendment generally protects individuals from warrantless searches and seizures, before an individual can invoke these protections and successfully argue for the suppression of evidence obtained from such searches, he or she has the burden to show a legitimate expectation of privacy in the place or thing being searched. *State v. Mitchell*, 20 S.W.3d 546, 557 (Mo.App.W.D. 2000). The Supreme Court of the United States has declared that "a person's 'status as an overnight guest is alone enough to show that [the guest] . . . had an expectation of privacy in the home that society is prepared to recognize as reasonable.'" *United States v. Oates*, 173 F.3d 651, 656 (8th Cir. 1999) (quoting *Minnesota v. Olson*, 495 U.S. 91, 96–7, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)). "The Court has also noted, however, that '[f]rom the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with . . . a place where [the guest] . . . and his possession will not be disturbed by anyone *but his host and those his host allows inside.*'" *Id.* (quoting *Olson*, 495 U.S. at 99, 110 S.Ct. 1684).

■ Here, the police conducted a warrantless search of Todd Schaller's basement on Lami Street, in which Feldt had been living for about twelve days, and seized a computer. As the result of a nearly three-year forensic examination conducted after Feldt provided his signed consent to search the computer's contents, the police found a video of child pornography on the computer. We assume arguendo that Feldt had a reasonable expectation of privacy as to the computer and other belongings kept in the basement, and we proceed to determining whether the search of the basement and seizure of the computer violated Feldt's Fourth Amendment rights.

■ It is axiomatic that the Fourth Amendment, which applies to the various states through the Due Process Clause of the Fourteenth Amendment, prohibits unreasonable searches and seizures. *State v. Bunch*, 787 S.W.2d 859, 861 (Mo.App.E.D. 1990). A search without a warrant is unreasonable under the Fourth Amendment unless it falls within certain narrow, carefully delineated exceptions. *Id.* (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). But a warrantless search in which proper consent, voluntarily given, is obtained is constitutionally valid. *State v. Howes*, 150 S.W.3d 139, 149 (Mo.App.E.D. 2004); *State v. Smith*, 90 S.W.3d 132, 141 (Mo.App. W.D. 2002). To establish proper consent, the State must prove by a preponderance of the evidence that the person giving the consent did so voluntarily and had the authority to do so. *Id.* (citing *State v. White*, 755 S.W.2d 363, 366 (Mo.App.E.D. 1988)). A third party with joint access to or control of the premises sought to be searched has authority to consent to a search, and that consent is valid against any absent persons with whom that au-

thority is shared. *Id.* (citing *Bunch*, 787 S.W.2d at 861).

■ A warrantless search based on consent is valid also if the police officers involved reasonably believed that the person granting consent had the authority to do so, even if that belief later turns out to be erroneous. *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177, 186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)); *see also State v. Lewis*, 17 S.W.3d 168, 170 (Mo.App.E.D. 2000).

In this case, Feldt does not challenge whether Schaller gave consent to search the basement of his home, or the voluntariness of that consent. Feldt questions merely whether, given the circumstances of his stay in Schaller's basement, Schaller had the authority to consent to a search of the basement.

The record viewed in the light most favorable to the trial court's ruling shows that Feldt admitted to the police prior to the search that Schaller was the owner of the Lami Street residence where he had been staying in the basement. The basement, which could be entered from the upstairs through a door that could be locked from below, constituted one open space not separated into bedrooms or private areas, and accessed a shared patio— i.e., one that could be accessed from upstairs as well. The record does not show that at the time of the search, the door was locked that connected the basement to the upstairs interior of the house, or that Schaller or the police had any difficulty opening it.

Therefore, we are compelled to conclude at the very least that the police reasonably believed that Schaller had the authority to consent to a search of the basement. Thus, we find no Fourth Amendment violation stemming from the search or the seizure of the Lami Street computer. To the extent that Feldt challenges the trial court's refusal to suppress other evidence in addition to the computer—such as his incriminating statements to police officers about its contents—on the grounds that such evidence was the fruit of an illegal search and seizure, we reject this challenge, too, because we find that there was no search and seizure in violation of the Fourth Amendment. Finally, we note that Feldt has not challenged the constitutionality of the forensic search of the actual contents of the Lami Street computer because, as noted above, he provided his signed consent for that search.

Consequently, we find that the trial court did not abuse its discretion in denying Feldt's motion to suppress. Point denied.

## Point V: The Sufficiency of the Evidence to Support Feldt's Conviction on Count I

In his fifth and final point on appeal, Feldt claims that there was insufficient evidence to support his conviction on Count I of the class B felony of possession of child pornography arising from the seizure by police of the Tamm Avenue computer. We disagree.

■ First, however, we must answer a preliminary question raised by this point: whether we need even consider the sufficiency of the evidence here in light of our finding of reversible trial error as to Feldt's first point on appeal. We believe we must. We are convinced that Feldt is entitled under principles of due process to the appellate review he requests of whether the State brought sufficient evidence to convict him on Count I. This is true even though he has raised other points on appeal, one of which—the denial of his right to a jury trial—we have concluded calls for reversal and remand for a new trial here. For if we declined to address this point and the State in fact had failed to bring

constitutionally adequate evidence to support Feldt's conviction, it would, as observed by the Arkansas Supreme Court in *Harris v. State*, 284 Ark. 247, 681 S.W.2d 334, 335 (1984) (citing *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)) (holding that an appellant who has challenged the sufficiency of the evidence, along with other assignments of error, is entitled to have that issue decided before the case is reversed and remanded on other grounds, so long as such review does not prejudice the state or defendant), "defeat the purpose of the double jeopardy clause if the prosecution were afforded a second opportunity to supply evidence it had failed to muster in the first trial."

In other words, if in reversing on other grounds and remanding for a new trial we simply avoided Feldt's insufficient-evidence argument as to Count I, we agree with the *Harris* court that we would thus "ignore the protection intended by the double jeopardy clause as interpreted [by the Supreme Court of the United States] in *Burks*." *Harris*, 684 S.W.2d at 335; *cf., e.g.*, *State v. Hedrick*, 637 S.W.2d 306, 308 (Mo.App.W.D. 1982) (holding that where all the State's evidence has been admitted and insufficiency has resulted—and not from the trial court's erroneous exclusion of evidence or the reviewing court's exclusion of evidence erroneously admitted by the trial court—the case must not be remanded for a new trial).

We find no Missouri authorities to the contrary, and none addressing this issue directly. One case, *State v. Wood*, 596 S.W.2d 394 (Mo.banc 1980), and its progeny could be said to address our issue indirectly, but no case precludes us from applying these principles from *Harris* here. In *Wood*, the Missouri Supreme Court addressed this Court's reversal and remand for a new trial of a judgment of conviction on the grounds that it was based on *improperly-admitted* evidence. 596 S.W.2d at 397. The Supreme Court held that even though without such evidence there may have been evidentiary insufficiency, retrial would not violate double jeopardy principles in part because there was no finding by this Court that insufficient evidence (including the inadmissible evidence) was presented to convict the defendant at the first trial. *Id.* at 398–99. The Supreme Court reasoned that "[i]f the evidence offered by the State is received after challenge and is legally sufficient to establish the guilt of the accused, the State is not obligated to go further" and, lest it be prejudiced, "is entitled to rely upon the rulings of the court and proceed accordingly." *Id.*

Relevant to the issue here, then, *Wood* decided at most that specifically when the reviewing court reverses for inadmissible evidence, the defendant is not *entitled* to a determination whether the evidence was sufficient to convict him, since such inquiry might prejudice the State if both the inadmissible evidence were ignored and the State were deprived of a proper opportunity to present additional evidence that would have been presented at the first trial if it had not been cumulative to at least some of the improperly-admitted evidence. This was the *Wood* court's answer to the specific question it stated was posed by the case: whether *Burks* or its companion case, *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), "proscribes retrial of an accused following reversal of prior conviction predicated upon an incorrect ruling by the trial court as to the admission of evidence even where the discounting of the improperly received evidence results in evidentiary insufficiency." *Wood*, 596 S.W.2d at 399.

Accordingly, because in this case our grounds for reversal are *unrelated* to the

admissibility of evidence, and our consideration of the sufficiency of the evidence does *not* prejudice the State or Feldt, we conclude that *Wood* does not stand in the way of Feldt's entitlement under double-jeopardy principles discussed in *Burks* to the review he requests on appeal of the sufficiency of the evidence presented at trial to convict him. Further, we note that no case has expanded *Wood* into the territory occupied by this case; thus, if it is conceivable that Feldt was not convicted on sufficient evidence, *Burks* and Missouri law caution that we should not risk depriving him of his due process rights by failing to review for sufficiency.

■ With that settled, we proceed to our review of the sufficiency of the evidence. Our review is limited to determining whether sufficient evidence was presented at trial from which a reasonable juror might have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt. *State v. Marquis*, 446 S.W.3d 311, 315 (Mo.App. W.D. 2014) (quoting *State v. Starkey*, 380 S.W.3d 636, 641 (Mo.App.E.D. 2012). Under this standard, we accept as true all of the evidence favorable to the verdict, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences to the contrary. *Id.* (quoting *State v. Dulany*, 781 S.W.2d 52, 55 (Mo.banc 1989)). We give great deference to the trier of fact and do not act as a "super juror" with veto powers. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo.banc 1998)).

■ Here, Feldt was charged in Count I with possessing the Tamm Avenue computer on May 10, 2011, a date that fell after he had already left the computer at the Tamm Avenue residence. Accordingly, the State brought evidence showing that on that date he had *constructively* possessed the computer—at a minimum, that he had "access to and control over the area where the pornography was found." *State v. Roggenbuck*, 387 S.W.3d 376, 382 (Mo. banc 2012).[5] We believe the State's evidence was sufficient to support Feldt's conviction on Count I.

The homeowner of the Tamm Avenue residence testified that he had discussed with Feldt what they would do with the items Feldt left behind, including the Tamm Avenue computer, after he moved to Lami Street. The homeowner stated that Feldt specifically asked him not to get rid of any of the items, so he promised that Feldt was "free to come collect any of his things at any time as long as he contacted [the homeowner] and [he] was there to let [Feldt] enter and collect and remove whatever he needed to remove." The homeowner testified that Feldt, before being arrested, contacted him and returned to collect clothing, a bicycle, and a computer. According to the homeowner, Feldt also retained a key to the Tamm Avenue residence, and the homeowner never changed his locks. These facts are sufficient to establish the access and control required to support a conviction for the constructive possession of child pornography. Point denied.

---

**5.** Constructive possession is defined by § 556.061(22) as having the *power* and *intention* at a given time to exercise dominion or control over an object either directly or through another person. Given the particular evidence here—discussed in detail below—that Feldt, even after leaving Tamm Avenue, had the ability and desire to maintain control over all his property left there, including the computer at issue in Count I, the variance between the statutory definition of "constructive possession" and the minimum proof *Roggenbuck* and other cases say is required—that the statute further requires the "power and the intention" to exercise control over an object—does not alter our conclusion that there was sufficient evidence to convict Feldt on Count I.

## Conclusion

For the reasons stated above, we reverse the judgment of the trial court and remand for a new trial consistent with this opinion.

Kurt S. Odenwald, J., and Gary M. Gaertner, Jr., J., concur.